1  Randall Henri Steinmeyer, in propria persona
   Mail: 700 W. Harbor Drive., Suite 1302
2  San Diego, CA 92101
   Phone: (619) 742-7533
3  Email: Randall7575@me.com

4  In Propria Persona

**FILED**

Jun 22 2023

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY    s/ melindajwilliams    DEPUTY

5

6

7

8           **UNITED STATES DISTRICT COURT FOR THE**
9               **SOUTHERN DISTRICT OF CALIFORNIA**

10

11  RANDALL HENRI STEINMEYER, an
    individual                                **'23CV1160 JLS  BGS**
12
                    Plaintiff,
13          vs.

14  AMERICAN ASSOCIATION OF             **VERIFIED COMPLAINT**
    BLOOD BANKS
15
                Defendant.
16

17

18

19

20

21

22

23

24

25

26

27

28

                        **VERIFIED COMPLAINT**

# I.    **INTRODUCTION**

1. This is a lawsuit seeks damages and to enjoin the Defendant's fraudulent attempt to switch the standards for commercial DNA testing in the United States. As evidenced herein, Plaintiff is already a victim of the switch and seeks to halt further injury by virtue of the effects of the switch detailed herein.

2. In 2019, Plaintiff was injured by lookalike test disguised as a paternity test which Defendant verified with the AABB seal to signify compliance with AABB regulations.

3. In July 2022, Plaintiff filed an FDA Citizen Petition to halt the sale of the lookalike test. The FDA Citizen Petition revealed (1) the labs were selling lookalike tests disguised as paternity tests and (2) which violated the regulations and (3) that Defendant AABB regulator needed to be replaced with a more suitable regulator.

4. In July 2022, Plaintiff files a Citizen FDA Petition alleging the Defendant regulator was stamping lookalike tests with the AABB seal and fraudulently

claiming them to be   (A) paternity tests and (B)compliant with AABB regulations.

5. In Winter 2022, the Defendant responded revealing the science behind its test never existed. In fact, all of the science" cited by the Defendant **was fraudulent** and/or nonsensical.

## The Truth is revealed

## Defendant Proposes a New Standard

6. In June 2023, and in further response to the Citizen FDA Petition, the Defendant seeks to change the standard from forensic science to "non-traditional" or lookalike test. To justify the switch from forensic to non-traditional (or lookalike), Defendant revealed that the switch had already taken place. And further revealed the Defendant was (is) stamping results with its seal (including Plaintiff's), despite knowledge they violate the applicable regulations and statutes.

7. The lookalike test standard violates the applicable regulations as it is neither a paternity test, nor compliant with regulations. The regulator seeks to change the regulations *from* "forensic science" *to* "untraditional testing"

standard, which will allow the lookalike to be the new standard for DNA paternity testing in the United States.

8. The new lookalike standard is motivated by fraud and arises from a larger disparity in knowledge between the regulator and the public.

9. Defendant AABB seeks to rewrite science, and write in fraud, and is just days away from creating the illusion that the "public" has blessed this standard change. The proposed "untraditional" (or lookalike) standard (1) violates the DOJ Directive to Judges deciding DNA paternity cases (2) violates state statutes (3) not peer-reviewed, and (4) never validated. Furthermore, Defendant seeks to introduce a standard not used in any other forensic lab and is even illegal in some countries.

10. Put another way, the Defendant  is adopting a lookalike test standard while abandoning the forensic standards, but leaving on the forensic science wrapper,  and then issuing a new regulation thereon not reasoned scientific endeavor.

11. Defendant AABB seeks to rewrite science, and write in fraud, and <u>is just</u> <u>days away from creating the illusion that the "public" has blessed this</u> <u>standards change</u>. Defendant's  standards change is dishonest, wrong, dangerous, illegal and not even supported by the Committee responsible for the standards change. Furthermore, the standards change will materially impact the lives of US citizens.

12. Plaintiff seeks damages and to  enjoin the Defendant from (1) changing the standard from paternity (via the POA)  to "non-traditional" (or lookalike) (2) and enjoining the Defendant from closing public comment on the standards change and (3) until such time the Defendant discloses a peer-reviewed supported basis for switching the current forensic standard to non-traditional or lookalike and (4) together with the identity of the AABB Relationship Testing Standards Committee, if any, who support the standard switch.

13. Defendant claims its proposed standards change will occur **June 22, 2023** or sometime thereafter.

## PARTIES

14. Plaintiff Randall Steinmeyer (hereinafter "Plaintiff") suffered material damages as a result of Defendants' affixing an AABB seal on the results under false pretenses. Plaintiff resides at 700 West Harbor Drive San Diego, California.  Plaintiff is a citizen of California.

15. Defendant American Association of Blood Banks ("AABB") is an international not-for-profit organization, consisting of nearly 2,000 institutional members and 8,000 individuals involved in blood banking, molecular testing, and related biological therapies. Defendant maintains its principal offices in 4550 Montgomery Ave #700, Bethesda, Maryland. From its Maryland headquarters, Defendant develops and enforces standards for DNA paternity and other relationship testing.  Pursuant to its Form 990's the Defendant AABB generates approximately $20,000,000 in revenue, annually. Defendant is a citizen of Maryland.

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

17. As stated infra, Plaintiff Randall Henri Steinmeyer is a citizen of California. Having conducted a good faith inquiry regarding the citizenship of the Defendant Plaintiff alleges, on information and belief, that Defendant AABB is not a citizen of California for purposes of determining diversity jurisdiction.

18. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the conduct giving rise to the claims asserted herein occurred in this District. A material amount of the conduct took place in a courtroom in this District and accordingly, on information and belief, the conduct took place in the District.

# BACKGROUND

## A. Dishonest

19. To explain the new standard, Defendant claims the labs will (and are using) non-traditional standards already claiming the labs are determining paternity by measuring "centimorgans."[1] Defendant's explanation is dishonest as the labs are not using centimorgans. Moreover, there is no peer reviewed literature to support the use of centimorgans in paternity testing.

## B. Wrong

20. The proposed standard is simply wrong. There is no peer reviewed research supporting nontraditional testing in place of forensic paternity testing but leaving on the paternity label. The POA standard is the only peer reviewed standards on this subject of DNA paternity testing. The proposed "untraditional" (or lookalike) standard (1) violates the DOJ Directive to Judges deciding DNA paternity cases (2) violates state statutes (3) not peer-reviewed, (4) never validated.

---

[1] "Non-Traditional Relationship Testing Statistics: Methods where the … measure of statistical support…is calculated using formulas that do not include the frequencies of specific alleles, genotypes, or haplotypes of the tested parties. Instead, statistical support is calculated using formulas that include other parameters (e.g., shared centimorgans). These statistics are typically used for very large SNP or other nucleotide data sets."

## C. **Paternity test vs fraudulent lookalike**

21. A paternity test compares and alleged father to a Child's POA. If the Alleged Father matches the POA, he can be the biological father. If the Alleged Father does not match the POA, he cannot be the biological father.

22. Conversely, the non-traditional, or lookalike test, cannot identify POA or alleged fathers. Nevertheless the Petition reveals the labs and regulator were fraudulently report the lookalike results in the same format as a forensic paternity test. In so doing, the labs create an impression (on non-experts) that the "matches" generated therein **must also be paternity[2] matches. This impression is false.[3]**

23. In fact, with this hiding-the-mismatches trick, (1) the labs can issue faux DNA results concerning biology but call it forensic science and (2)

---

[2] Paternal Obligate Allele ("POA") matches.
[3] The lookalike results are actually art, made from a subset of results cut and pasted together. If one were to compare 2 random person's DNA side by side, one would see matches. For example, if one looked at the same location[#] in any 2-random people, on average they will "match" the other person's DNA at more than 66% of the location (markers) analyzed. In the context of a paternity test, to be considered a "biological" father, one must have a 100% match, i.e., no mismatches. As a thought experiment, if only the matches were shown but mismatches hidden, one could create the impression "anyone is the father of anyone." Unfortunately, the labs also made this discovery and is now exploiting the public's naïveté associated with paternity testing. That is, labs hide half the results, and then the labs present only the matches it cherry-picks and discards the mismatches as if they never occurred, leaving only the matches. On the layperson, this hiding-the-mismatches trick is highly effective.

Defendant AABB can rubber stamp its seal thereon (3) so the lookalike "results" can be turned into money in both public and private markets.

24. For example, to the extent that fraudulently convincing an individual that they are a relative or parent can be turned into money, the lookalike tests are the ideal weapon. Using the lookalike scheme, one could show they are the grandparent of a child, or perhaps someone's aunt/uncle or even a long-lost brother/sister or even the father of a child.

## D. **Dangerous: Lookalike tests cause injury**

25. The effects of these fraudulent lookalike tests transcend mere financial issues and actually cause injury. For example, when these result are used to create fictitious relationships out of activities that never occurred, and then paraded as "positive" evidence of paternity at 99.9999% and which the target either (1) knows the result is impossible or (2) discovers the result is fraudulent through a subsequent "forensic" tests, the targeted (adult) may suffer a shaken faith like syndrome with respect to his future lab/medical testing. As a result, necessary testing and surgeries will be delayed causing injury.

26. In fact, Plaintiff's faith was so shaken he left the State of California and

eventually the United States to have testing related to cancer, where the

AABB was not part of the local ecosystem resulting in delayed surgeries and

testing which could have been fatal as a result.

## E. **The proposed standard change Violates applicable law**

27. Federal Regulations:  DOJ Instructions to Judges in family law court

deciding DNA paternity test cases, prohibits the judges from using lookalike

testing (requiring the maternal DNA to be used and all results disclosed).

Conversely, in the lookalikes, maternal DNA is removed, and half (20/40)

are hidden.[4]

28. State Statutes:  California Statutes[5] prohibits lookalike testing.  Fam Code

7552.5   requires (1) "all results be disclosed" and (2) Fam Code 7552

requires the results reasonably relied upon by experts in genetics.

---

[4] The  DOJ manual Guide for Judges in Child Support Enforcement.
https://www.ojp.gov/ncjrs/virtual-library/abstracts/guide-judges-child-support-enforcement-second-edition
[5] Fam Code 7552.5 requires the disclosure of all the results, not a subset. Fam Code 7552 requires the test be relied upon by experts.

29. Conversely, in the lookalike, only half the results are disclosed, half are hidden.  Further, genetics experts cannot and do not rely on the lookalike test. A DNA expert has testified to the same. See DNA Expert Decl of Sheila Decl.

30. <u>AABB's Regulations:</u> Until June 21, 2023, Defendant AABB has prohibited lookalike testing and its  own regulations require the maternal DNA and all results be disclosed.[6] Conversely, in the lookalikes, maternal DNA is removed and half (20/40) are hidden.

## F.  **<u>The proposed standards  change is not supported by the AABB RTSC Members</u>**

---

[6] See Section 5.3.7 of the AABB's 12th Edition Guidance Document for the **inclusion of mothers rather than two party paternity testing.** The reasons cited by the AABB include to allow the Lab to make:
- **"Informed conclusions** in determining relationships"
- "Offset current inherent **errors.**"
- **"Identify cases of fraud"**

31. The AABB claims the Relationship Testing Standards Committee (RTSC) is comprised of representatives from organizations including the American Bar Association, the United States Citizenship and Immigration Services, the United States Department of Homeland Security, the United States Department of State, and the International Society of Forensic Genetics.

32. A standard change then would imply the RTSC (1) endorses the change and (2) the change is based on peer reviewed sciences. However, when investigated, none of the other AABB, RTSC Standards members support this change as it conflicts with their own policies/publications.

## The American Bar Association (ABA) precludes the lookalike

33. In 2018, the ABA (and co-member George Maha) published a document reconfirming its awareness that the lookalike is not a legitimate science tool. The document reveals that a DUO motherless test for paternity does not exist. Rather, the article explains, <u>if missing, the maternal DNA is reconstructed.</u>

## Immigration and Dept of Homeland Security precludes the lookalike

34. INS prohibits the lookalike (or DUO-motherless-for-paternity test) because of fraud by the mother. The AABB admits the same in its own publications.

United States Department of State prohibits the lookalike (or DUO-motherless-for-paternity test) because of fraud by the mother.

35. Department of State's own website further confirms only traditional paternity testing (i.e., trio) is permitted. [7]

The International Society of Forensic Genetics,

36. Butler serves on the AABB, RTSC "as a representative of the International Society for Forensic Genetics (ISFG)."  In June 2023, Butler was contacted by Plaintiff regarding the lookalike standards change, Butler claimed he was surprised and implied he knew nothing about it.

37. Furthermore, the other co- members of the AABB RTSC do not **publicly** support this change.  That is, Butler's co-ISFG Executive Board does not support the standard change. In fact, it would be illegal in their own jurisdiction.  That is, Dr. Walther Parsont, Marielle Vennemann and Sascha

---

[7] Only through trio (non-lookalike) testing can a POP of 99.5% be achieved: "Consular officers may only accept test results reporting a 99.5 percent or greater degree of certainty with respect to paternity."

Willuweit are citizens of Germany. In Germany, DUO motherless testing, alone, is illegal.

38. Moreover, in Spring 2023, AABB RTC member Butler published "Recent advances in forensic biology and forensic DNAtyping: INTERPOL review 2019–2022," Forensic Science International: Synergy, Volume 6, 2023. Not once in the article discussing the **previous 4 years of advances** in forensic DNA testing did Butler mention any test resembling the lookalike.

39. In addition, in the same article, Butler, as a president of International Society for Forensic Genetics (ISFG), published the following statement which implies that ISFG's and AABB's standards are harmonious with one another.[8] However, post- June 21, the ISFG and AABB standards will be worlds apart.

The AABB

---

[8] "The Association for the Advancement of Blood and Biotherapies (AABB) [29] published the 15th edition of their Standard for Relationship Testing Laboratories, which became effective on January 1, 2022. This documentary standard was developed by the AABB Relationship Testing Standards Committee and applies to laboratories accredited for paternity testing and other forms of genetic relationship assessment. The International Society for Forensic Genetics (ISFG) DNA Commission30 published two articles during the timeframe of this INTERPOL review (see Table 2). In 2020, guidelines and considerations were published on evaluating DNA results under activity level propositions [38]."

40. The AABB publishes and sells expensive research. The AABB's research and publications confirms the lookalike violates all AABB's prior publications.

## The DOJ

41. The DOJ manual Guide for Judges in Child Support Enforcement precludes the lookalike. [9]

**G. The Effects of an AABB stamp on lookalike results disguised as paternity results is material**

42. The AABB stamp allows the lookalike "results" to be "monetized. The tests are based on "standards developed by experts who serve on AABB's Relationship Testing Standards Committee.[10] As such, an incredible amount

---

[9] The manual requires the results to be based on maternal DNA and all results disclosed, whereas the lookalike does neither.
**https://www.ojp.gov/ncjrs/virtual-library/abstracts/guide-judges-child-support-enforcement-second-edition**

[10] https://www.aabb.org/standards-accreditation/standards/relationship-testing-laboratories

of trust is placed into this Committee as it is "assuring the public that the highest levels of accuracy and quality are used."[11]

43. In addition to the paternity test the lookalike standard impacts the following other test. (1) the DUO-grandparent, (2) DUO-aunt/uncle (3) DUO-brother/sister and (4) DUO-paternity. The core intended targets of these lookalike tests disguised as DNA (1) grandparent, (2) aunt/uncle (3) brother/sister and (4) paternity tests include (1) wealthy single men and (2) wealthy married men and (3) wealthy bereaved parents and (4) even dead men (estates) whose obituaries implied they passed with death benefits and other indications of wealth.

## FACTUAL ALLEGATIONS

44. Prior to 2017, the labs regulated by the AABB secretly switched some the paternity tests with a cheap lookalike test. The lookalike switch occurred without notice to the public or approval from the regulator.

---

[11] Id.

45. In 2019, Plaintiff was injured by lookalike test disguised as a paternity test which <u>Defendant fraudulently verified with the AABB seal as compliant with AABB regulations, Fam Code 7552 and 7552.5 and other applicable rules.</u>

46. In July 2022, Plaintiff filed an FDA Citizen Petition to halt the sale of the lookalike test.  The FDA Citizen Petition revealed (1) the labs were selling lookalike tests disguised  as paternity tests and (2) which violated the regulations and (3)  that Defendant AABB regulator needed to be replaced with a more  suitable regulator.

47. In Winter 2022, the Defendant AABB and the Labs responded to the FDA Citizen Petition. In the response,  Defendant and the labs cited "science" to explain what the test actually was based upon and claimed Plaintiff's Petition was misplaced.

48. However, in Spring 2023, a full analysis of  the "science" cited by the Defendant AABB (and the labs) revealed  their citations (before the FDA) were **all identically fraudulent** and/or nonsensical.

### The Truth is revealed

### Defendant Proposes a New Standard

49. In June 2023, and in further response to the Citizen FDA Petition, the
    Defendant seeks to change the standard from forensic science to "non-
    traditional" or lookalike test. To justify the switch from forensic to non-
    traditional (or lookalike), Defendant revealed that the switch had already
    taken place. And further revealed the Defendant was (is) stamping results
    with its seal (including Plaintiff's) , despite knowledge they violate the
    applicable regulations and statutes.

50. The new standard is motivated by fraud and arises from a larger disparity in
    knowledge between the regulator and the public. Defendant AABB seeks to
    rewrite science, and write in fraud, and is just days away from creating the
    illusion that the "public" has blessed this standards change.

51. For example: In lieu of deriving the POA, the Defendant seeks to rewrite
    science into nonsense, which are designed around the existing fraud

18

illuminated by the FDA Citizen Petition, both deleting the current forensic "POA" standard which has been in place for 40 years. [12]

52. In place of the POA standard, the AABB seeks to adopt following "non-traditional" standards (or meaningless lookalike standard) which will allow for fraud. [13]

---

[12] "~~5.3.2 Testing Requirements for the Null Hypothesis and Alternate Hypothesis~~
~~5.3.2.1 When the null hypothesis is that a child inherited its parental obligate allele (POA) from a person with the genotype of the alleged parent and the alternate hypothesis is that the child inherited its POA from a random person in the alleged parent's population, the laboratory shall test three or more independent autosomal loci.~~
~~5.3.2.2 When the null hypothesis is that a child inherited its POA from a person with the genotype of the alleged parent and the alternate hypothesis is that the child inherited its POA from a person who is related to the tested alleged parent, and there is a failure to exclude, the laboratory shall test eight or more independent autosomal loci.~~"

[13] That Defendant explains it as follows: "New standard 5.3.2 was created by combining the former content of standards 5.3.2 and 5.3.2.1 into one standard. By combining the requirements and requiring a minimum of 8 loci be attempted, the standard can accommodate both relatives of the tested individual and random individuals. This editing to the content does follow the flow of normal work processes in a laboratory. Of note, the elements of former 5.3.2.1 were being maintained in the previous editions to cover situations where a laboratory still conducted RFLP testing. However, at this time, acquiring RFLP testing would be impractical, and no laboratories perform this testing at this time."
"When using <u>non-traditional relationship testing</u> statistics a ~~computer algorithm(s) to evaluate a large number of loci (see Standard 5.3.11.3) that does not produce a standard combined relationship index~~, the laboratory shall provide an explanation of the evaluation, the equivalency to the combined relationship index of 100, and the ~~version of the algorithm~~ <u>statistical method(s)</u> used. <u>Standard 5.3.11.3 applies.</u>

53. In fact, Defendant defined "Non-Traditional Relationship Testing Statistics "as follows (and which allows for fraud to be perpetrated): "Methods where the ...measure of statistical support, is calculated using formulas that **do not include the frequencies of specific alleles, genotypes, or haplotypes of the tested parties."**

54. Defendant's explanation of the new standard, illuminates its penchant for dishonesty with the public: Here the AABB removes the foundation of DNA testing but leaves on the label, explaining: "Instead, statistical support is calculated using formulas that include other parameters (e.g., shared centimorgans). These statistics are typically used for very large SNP or other nucleotide data sets."

55. The Defendant's explanation here is not even genuine as (1) its labs it regulates are not testing "very large SNP" or (2) "shared centimorgans," in connection with DNA paternity testing. Clearly, the Defendant's rationale for the switch from paternity to nontraditional, but leaving on the paternity

label, is not driven by science. Rather, the Defendant AABB reveals the

switch is necessary because the switch already occurred. [14]

56. Instead of directing the labs to comply with their own standards, the

Defendant is changing the standards so the fraud label requires lookalikes

can "comply" with the new standard i.e., regulations. That is, the new

"nontraditional" testing standard <u>will allow</u> the lab to manipulate test results

and the public, at will, thereby subjecting the public to injury.

57. In truth, Defendant (1) seeks to switch the regulation for a paternity test to

"non-traditional" which would legalize fraud in science regulated by the

AABB (2) which contradicts all published peer reviewed science on the

subject of DNA testing in the past 20 years and (3) fails to provide any

coherent explanation for its decision.

58. Put another way, the AABB is adopting a lookalike test standard while

abandoning the forensic standards, but leaving on the forensic science

---

[14] That is, "Standard 5.3.9 has been edited to include the "new concept" **of "non-traditional relationship testing statistics" and "traditional relationship testing statistics" ....This better reflects the current landscape of the field"**

wrapper, and then issuing a new regulation thereon fueled by regulatory capture, not reasoned scientific endeavor.

59. The proposed "untraditional" (or lookalike) standard (1) violates the DOJ Directive to Judges deciding DNA paternity cases (2) violates state statutes (3) not peer-reviewed, and (4) never validated. Furthermore, Defendant seeks to introduce a standard not used in any forensic lab and is even illegal in some countries.

60. Plaintiff seeks to enjoin the Defendant from (1) changing the standard change from paternity (via the POA) to "non-traditional" (or lookalike) (2) and enjoining the Defendant from closing public comment on the standards change and (3) until such time the Defendant discloses a peer-reviewed supported basis for switching the current forensic standard to non-traditional (or lookalike) test (4) together with the identity of the AABB, RTSC, if any, who support the standard switch.

61. Defendant claims its proposed standards change will occur **June 22, 2023** or sometime thereafter.

## COUNT ONE

### (Intentional Misrepresentation as Against Defendant)

62. Plaintiff hereby restates and incorporates by reference the preceding paragraphs as though set forth in full herein.

63. In 2017 Defendant caused its seal to be affixed to Plaintiff results, certifying the results as compliant with AABB regulations.

64. In 2019 Defendant caused the AABB stamped and certified the results to against plaintiff despite knowing the results did not meet the minimum conditions to be monetized (or compliant with AABB regulations)

65. Defendant Maha, on behalf of LabCorp made the following representations to Plaintiff that its lookalike test was actually an AABB complaint "paternity test." When AABB made this representation it them to be false and made this representation with the intention to deceive, defraud and induce Plaintiff to act in reliance on these representations in the manner hereinafter, or with the expectation that Plaintiff would so act.

66. Plaintiff, at the time this representation was made by Defendant and at the time Plaintiff took the actions herein alleged, was ignorant of the falsity of Defendants' representations and believed them to be true. In reliance on these representations, Plaintiff was induced to submit to a motherless test.

67. Had Plaintiff known the actual facts, he would have requested an actual scientific paternity test which would have excluded him as the alleged father. Plaintiff's reliance on Defendants' representation was justified because there is no reason a layperson would have otherwise not relied on the statement made by a regulator such as the Defendant.

68. As a proximate result thereof, Plaintiff has been damaged in an amount to be proven at trial but not less than the jurisdictional limit of this court.

69. The aforementioned conduct was an intentional misrepresentation, deceit and/or concealment of material facts known to Defendants, with the intention on the part of Defendants of thereby depriving Plaintiff of property, legal rights or otherwise causing injury and was despicable conduct that subjected to cruel and unjust hardship and conscious disregard

of Plaintiff's rights, so as to justify an award of exemplary and punitive

damages.

## COUNT TWO

### (Fraudulent Concealment as Against Defendant AABB)

70. Plaintiff hereby restates and incorporates by reference the preceding

paragraphs as though set forth in full herein.


71. Plaintiff is informed and believes and thereon alleges that Defendant who

concealed certain information, including the actual paternity results of which

50% are not disclosed.


72. AABB deliberately concealed the true facts regarding motherless testing and

deliberately concealed the true facts known to them or failed to make any

reasonable investigation to determine the true facts from which

representations were made as to motherless testing to determine whether

they were true or false, and without having any sufficient basis on which to

make any representations, knowingly made false representations, concealing

the defectiveness of lookalike  testing as set forth in this complaint.

73. Defendant's agents concealed the facts when they each knew the true and correct facts regarding motherless testing. The concealment of the true facts from Plaintiff was done with the intent to induce Plaintiff to submit to look alike testing and continue their profitable enterprise of marketing non-scientific and non-complaint genetic tests to the courts.

74. That had Plaintiff known that motherless testing was not a scientific genetic test or an actual paternity test, he would not have submitted to a lookalike test and instead requested a trio paternity test.

75. Defendants' concealment of information and act of intentionally switching Plaintiff's paternity test with a meaningless test, harmed Plaintiff. The aforementioned conduct was deceitful and/or a concealment of material facts known to Defendants, with the intention on the part of Defendants of thereby depriving Plaintiff of property, legal rights or otherwise causing injury and was despicable conduct that subjected to cruel and unjust hardship and conscious disregard of Plaintiff's rights, so as to justify an award of exemplary and punitive damages.

## COUNT THREE

### (Negligence Per Se as Against Defendant AABB)

76. Plaintiff hereby restates and incorporates by reference the preceding paragraphs as though set forth in full herein.

77. Defendant was  negligent per se in the performance of its duties as test regulator behalf of Plaintiff in the underlying case. Defendant violated genetic testing standards under Section 7552-7552.5 of the Family Law Code, prohibiting the lookalike and (1) requiring the test to be relied upon by experts and (2) disclosing 100% of the results not 50%.

78. Plaintiff is a member of the class of persons the statutes and regulations were designed to protect, that is, persons fraudulently accused to be "alleged fathers."

79. Defendant breached their duty to Plaintiff because it caused Plaintiff's lookalike test to be stamped as a regulatory test, despite it not being so.

80. As a direct and proximate result of the negligence per se of Defendant, Plaintiff sustained damages.  All damages suffered by Plaintiff were incurred

as a result of the negligence per se, carelessness, and/or recklessness of Defendant.

## COUNT FIVE

### Violation of California False Advertising Law (Cal. Bus. & Prof. Code, § 17500 et seq.) as Against Defendant AABB)

81. Plaintiff hereby restates and incorporates by reference the preceding paragraphs as though set forth in full herein.

82. Section 17500 makes it unlawful: "For any person,… corporation… or any employee thereof with intent directly on directly to dispose of real or personal property or to perform services… or to induce the public to enter into any obligation relating thereto, to make or disseminate… before public in this state,… in any newspaper or other publication… or in any other manner or means whatever… any statement, concerning that real or personal property or those services… which is untrue or misleading, and which is known, or which by exercise of reasonable care, should be known, to be untrue or misleading…." (§ 17500)

83. Beginning on or about a date unknown to Plaintiff, and continuing to the date of this complaint, Defendant have conducted a campaign of advertising to the public. This advertising consists of false statements made on AABB's website, and representations to alleged fathers and the court regarding the validity of its lookalike testing for purposes of determining paternity. This marketing and advertising were and are disseminated to the public across the state of California. Defendants has made and disseminated this advertising with the intent directly or indirectly to induce courts, private parties (such as Plaintiff), and other members of the public to purchase or submit to motherless testing for the purposes of determining paternity.

84. Defendants' advertising was untrue or misleading, and likely to deceive the public, as follows: (1) AABB's lookalike testing is not scientific and not an actual paternity test, and (2) AABB's test destroys the paternity evidence. In making and disseminating the above statements, Defendants knew, or by the exercise of reasonable care should have known, that these statements were untrue or misleading. Plaintiff is informed and believes, and on the basis of that information and belief alleges, that, unless enjoined by this court, Defendant will continue to engage in the untrue and misleading advertising alleged above.

85. As a direct and proximate result of the advertising described above, Defendants have received from Plaintiff, and continue to hold, an amount to be determined at trial.  Plaintiff is informed and believes, and on the basis of that information and belief alleges, that as a further direct and proximate result of the advertising described above, Defendant has received from members of the general public, and continue to hold, money acquired from the general public by Defendant as a result of marketing and selling lookalike tests sold as scientific paternity tests.

## COUNT SIX

**Violation of the California Unfair Competition Law (Bus. & Prof. Code, § 17200 as Against Defendant AABB)**

86. Plaintiff hereby restates and incorporates by reference the preceding paragraphs as though set forth in full herein.

87. Commencing on a date unknown to Plaintiff, Defendant has committed the following acts of unfair competition, as defined by Business and Professions Code section 17200, by engaging in deceptive, untrue, or misleading advertising of its testing as scientific paternity tests.

30

88. The acts described above were and are likely to mislead the general public and therefore constitute fraudulent or misleading acts within the meaning of Business and Professions Code section 17200. The fraudulent business and misleading practices of Defendant is likely to continue and therefore will continue to mislead the public by inducing alleged fathers like Plaintiffs to submit to unscientific paternity testing and presents a continuing threat to the public.

89. As a direct and proximate result of Defendant's conduct, Defendant AABB continued to rubber stamped lookalike results as paternity results complies with AABB regulations resulting in the talking of money that rightfully belong to members of the general public who have been adversely affected by Defendant's conduct, as well as to Plaintiff by virtue of Plaintiff's monetary damages exceeding $2,000,000.

## COUNT SEVEN

## INJUNCTIVE AND DECLARATORY RELIEF

### (Against Defendant AABB)

31

90. Plaintiff restates, realleges and incorporates by reference all preceding paragraphs, as if fully set forth herein.

91. Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, et seq., the Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described in this Complaint. An actual controversy has arisen in the wake of the lookalike test regarding Defendant's present and prospective common law and other duties to perform legitimate testing, and not fraud. The longer Defendant maintains the fraud, the injury to the Plaintiff continues, into the future. This is true even if they are not actively using Defendants' services.

92. Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a. Defendants continue to owe a legal duty to only use tests that are reasonably relied upon by other experts as required by statutes and

b. Defendants continue to breach this legal duty by employing the switched non-traditional standards which is not relied upon by other experts.

93. If an injunction is not issued, Plaintiff will suffer irreparable injury, and lack an adequate legal remedy, in the event the lookalike standard switch of Defendant, is permitted. Accordingly, the risk of more lookalike testing is real, immediate, and substantial. If more of this lookalike testing occurs, Plaintiff will not have an adequate remedy at law because many of the resulting injuries are not readily quantified and he will be forced to bring multiple lawsuits to rectify the same conduct.

94. The hardship to Plaintiff if an injunction does not issue exceeds the hardship to Defendant if an injunction is issued. Among other things, if the lookalike test switch continues, Plaintiff will likely be subjected to more injury, fraud, theft, and other harms described herein. On the other hand, the cost to Defendant of complying with an injunction by employing legitimate testing standard. is relatively minimal, and Defendants have a pre-existing legal obligation to employ such measures.

95. Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing more destroyed evidence and lookalikes, thus eliminating additional injuries that would result to Plaintiff (and the public).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendant as follows:

A. Requiring Defendant to pay damages sustained by Plaintiff by reason of the acts alleged herein in an amount to determined at trial but no less than $2,000,000;

B. Awarding Plaintiff prejudgment and post-judgment interest, as well as reasonable expert fees, and other costs;

C. Awarding Plaintiff punitive damages;

D. An order for Preliminary Injunctive Relief including commanding Defendant to halt the standard change from forensic patently  to non-traditional.

E. An order for Preliminary Injunctive Relief including commanding Defendant to disclose the remaining 50% of his results.

F. Awarding such other and further relief (including equitable relief) as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

34

Respectfully Submitted,

Dated: June 21,  2023                     Plaintiff, in pro per

By: /s/ Randall H. Steinmeyer

Randall Henri Steinmeyer

**VERIFICATION BY PLAINTIFF**

Plaintiff hereby swears  under other that the  allegations set forth in the Complaint are true and correct .That plaintiff has reviewed the complaint. That plaintiff knows that all allegations to be true.

      I declare under penalty of perjury, of the laws of the United States that the foregoing is true and correct.

      Executed this  22 day of June , 2023, at San Diego, California.

Randall Steinmeyer