UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANDALL HENRI STEINMEYER, an individual,<br><br>                              Plaintiff,<br><br>v.<br><br>AMERICAN ASSOCIATION OF BLOOD BANKS,<br><br>                              Defendant. | Case No.: 23-CV-1160 JLS (BGS)<br><br>**ORDER DENYING PLAINTIFF'S** *EX PARTE* **APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE**<br><br>(ECF No. 2) |

Presently before the Court is Plaintiff Randall Henri Steinmeyer's *Ex Parte* Application for Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue ("*Ex Parte* Appl.," ECF No. 2). For the reasons set forth below, the Court **DENIES** Plaintiff's *Ex Parte* Application.

## BACKGROUND

Plaintiff claims that Defendant American Association of Blood Banks, an organization that "develops and enforces standards for DNA paternity and other relationship testing," Verified Complaint ("Compl.," ECF No. 1) ¶ 15, has amended its standards to permit "non-traditional" or "lookalike" paternity tests that "(1) violate[] the

1  DOJ Directive to Judges deciding DNA paternity cases[,] (2) violate[] state statutes[,] (3)
2  [are] not peer-reviewed, [and] (4) [were] never validated," *id.* ¶¶ 12, 13, 20.  Such
3  fraudulent tests, Plaintiff contends, allow laboratories to issue "faux DNA results
4  concerning biology but call it forensic science," while Defendant "can rubber stamp its seal
5  thereon . . . so the lookalike 'results' can be turned into money in both public and private
6  markets."  *Id.* ¶ 23.  Plaintiff explains:

> [W]hen these result[s] are used to create fictitious relationships out of activities that never occurred, and then paraded as "positive" evidence of paternity at 99.999% and which the target either (1) knows the result is impossible or (2) discovers the result is fraudulent through a subsequent "forensic" tests, the targeted (adult) may suffer a shaken faith like syndrome with respect to his future lab/medical testing.

*Id.* ¶ 25.

Plaintiff initiated this action on June 22, 2023, asserting causes of action against Defendant for intentional misrepresentation, fraudulent concealment, negligence per se, violation of California's False Advertising Law, and violation of California's Unfair Competition Law.  *See id.* ¶¶ 62–89.  Plaintiff seeks "damages and to enjoin the Defendant's fraudulent attempt to switch the standards for commercial DNA testing in the United States."  *Id.* ¶ 1.  In the instant *Ex Parte* Application, Plaintiff requests that the Court "enjoin Defendant [American Association of Blood Banks] from switching the standards for commercial DNA testing in the United States, to a lookalike or []"non-traditional"[] standard."  Memorandum in Support of *Ex Parte* Application for Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue ("Mem.," ECF No. 2-1) at 4.

## LEGAL STANDARD

Federal Rule of Civil Procedure 65 governs the issuance of temporary restraining orders and preliminary injunctions.  The standard for a temporary restraining order ("TRO") is identical to the standard for a preliminary injunction.  *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).  To obtain either a TRO

or a preliminary injunction, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Generally, a TRO or preliminary injunction is considered "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. The moving party has the burden of persuasion. *Hill v. McDonough*, 547 U.S. 573, 584 (2006).

When a plaintiff has not provided notice to the defendant of the plaintiff's application for a TRO, Federal Rule of Civil Procedure 65(b)(1) imposes specific requirements that must be satisfied before a TRO can issue:

> The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1). "The stringent restrictions imposed . . . by Rule 65[ ] on the availability of ex parte temporary restraining orders reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." *Granny Goose Foods, Inc. v. Bhd. of Teamsters*, 415 U.S. 423, 438–39 (1974) (footnote omitted). Accordingly, "courts have recognized very few circumstances justifying the issuance of an ex parte TRO." *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006). "For example, an ex parte TRO may be appropriate 'where notice to the adverse party is impossible either because the identity of the adverse party is unknown or because a known party cannot be located in time for a hearing.'" *Id.* (quoting *Am. Can Co. v. Mansukhani*, 742 F.2d 314, 322 (7th Cir. 1984)). Alternatively, "[i]n cases where notice could have

been given to the adverse party, courts have recognized a very narrow band of cases in which ex parte orders are proper because notice to the defendant would render fruitless the further prosecution of the action.'" *Id.* (quoting *Am. Can Co.*, 742 F.3d at 322).

This District has additional requirements that parties must meet to demonstrate they are entitled to *ex parte* relief:

> A motion for an order must not be made ex parte unless it appears by affidavit or declaration (1) that within a reasonable time before the motion the party informed the opposing party or the opposing party's attorney when and where the motion would be made; or (2) that the party in good faith attempted to inform the opposing party and the opposing party's attorney but was unable to do so, specifying the efforts made to inform them; or (3) that for reasons specified the party should not be required to inform the opposing party or the opposing party's attorney.

S.D. Cal. Civ. R. 83.3(g)(2).

## DISCUSSION

Plaintiff filed the instant *Ex Parte* Application without providing notice to Defendant. Consequently, Plaintiff must meet the requirements of Federal Rule of Civil Procedure 65(b)(1) and Civil Local Rule 83.3(g)(2) prior to the issuance of a TRO. The Court finds that Plaintiff has not satisfied said requirements.

First, Plaintiff has not provided a declaration evidencing his attempts to notify Defendant of the instant *Ex Parte* Application. Plaintiff submits a declaration stating that he sent Defendant's counsel "multiple emails requesting [Defendant] terminate its efforts to formalize this standards switch to undefined, 'non traditional' testing," and that he "proposed and scheduled times with [Defendant's counsel] and her scientist . . . to discuss the same." Declaration of Plaintiff Randall Steinmeyer ("Steinmeyer Decl.," ECF No. 1-3) at 2. Plaintiff reports that all such attempts were "unsuccessful and greeted with silence[.]" *Id.* In the Court's view, while Plaintiff may have put Defendant on notice of the possibility that Plaintiff would pursue claims similar to those at issue here, Plaintiff did not satisfy Civil Local Rule 83.3(g)(2)'s requirement that "the party in good faith attempted to inform

the opposing party and the opposing party's attorney but was unable to do so, specifying the efforts made to inform them," nor Federal Rule of Civil Procedure 65(b)(1)'s requirement that "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Given Plaintiff's prior communications, Plaintiff plainly had the means to send Defendant's counsel a copy of the Complaint and *Ex Parte* Application so that Defendant would have an opportunity to respond to the instant request on the merits. Plaintiff, however, elected not to do so.

Second, Plaintiff's Declaration fails to provide "specific facts" that "clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1). Plaintiff's Declaration only refers to past injury, not any presently threated irreparable harm. For example, Plaintiff avers that "[i]n *2019*, [he] was injured by lookalike test disguised as a paternity test." Steinmeyer Decl. at 2 (emphasis added). Plaintiff also claims that his faith in scientific institutions was so shaken by the alleged change in paternity testing methods that he sought cancer treatment in another country "where [Defendant] was not part of the local ecosystem." *Id.* at 4. Assuming such "shaken faith" qualifies as injury, this injury also preceded the instant action. No other statements in Plaintiff's Declaration provide any indication of "immediate and irreparable injury." *See generally id.*

Plaintiff's Verified Complaint is similarly devoid of "specific facts" that "clearly show . . . immediate and irreparable injury." Fed. R. Civ. P. 65(b)(1). Plaintiff claims that the purported "standards change" occurred on June 22, 2023, Compl. ¶ 13, the same day Plaintiff initiated the instant action. But the Verified Complaint fails to explain how the alleged change will imminently and irreparably injure Plaintiff. The Verified Complaint only references past instances of injury to Plaintiff or wholly speculative injury to the general public. *See* Compl. ¶ 2 ("In 2019, Plaintiff was injured by lookalike test disguised as a paternity test."); *id.* ¶ 14 ("Plaintiff . . . suffered material damages as a result of Defendants' affixing an AABB seal on the results under false pretenses."); *id.* ¶ 25 (speculating that false paternity tests could shake public's faith in medical testing, resulting

in delay to "necessary testing and surgeries"); *id.* ¶ 26 (alleging Plaintiff's faith in medical testing was so shaken by false paternity test that he previously sought cancer treatment in foreign country); *id.* ¶¶ 62–85 (describing past alleged harm to Plaintiff); *id.* ¶ 88 ("The fraudulent business and misleading practices of Defendant [are] likely to continue and therefore will continue to mislead the public by inducing alleged fathers like Plaintiff[] to submit to unscientific paternity testing and presents a continuing threat to the public.").

In the Verified Complaint, Plaintiff alleges that he "will suffer irreparable injury, and lack an adequate legal remedy, in the event the lookalike standard switch of Defendant, is permitted." Compl. ¶ 93. Thus, according to Plaintiff, "the risk of more lookalike testing is real, immediate, and substantial." *Id.* As noted above, however, these conclusions are unsupported by "specific facts" showing such harm. Nowhere in Plaintiff's Declaration or Verified Complaint does Plaintiff attempt to explain how Defendant's purported change in standards poses a new, immediate, and irreparable threat of harm to Plaintiff.

The Court also reviewed the *Ex Parte* Application for an indication of imminent and irreparable harm that Plaintiff will face in the absence of an injunction, but the endeavor was fruitless. The *Ex Parte* Application states that Plaintiff faces irreparable injury in the form of "Loss of property," "Loss of paternity evidence," "Physical/Mental Injury," and "Loss of the test itself." *Ex Parte* Appl. at 16–18. First, Plaintiff does not explain what property he stands to lose as the result of Defendant's alleged change in standards. *See id.* at 16. To the extent that he faces monetary or other financial harm, such injuries are not irreparable, because they "can be remedied by a damage award." *Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991). Second, Plaintiff claims that the "non-traditional standard will actually destroy all the paternity evidence, including the paternity test itself." *Ex Parte* Appl. at 16. Plaintiff fails to explain how a general loss of paternity evidence will harm him immediately and irreparably. Third, Plaintiff's threatened "Physical/Mental" injury consists of his alleged "shaken faith like syndrome," which arose prior to the instant action. *Id.* at 17. Finally, Plaintiff claims that "[t]he statutory paternity test will no longer exist in California Family Courts" if

Defendant's change is permitted. *Id*. Plaintiff contends that he and the general public "would be stripped of even the possibility of receiving a paternity test" conforming to the requirements of California law. *Id*. at 18. But Plaintiff provides no evidence that he is currently seeking such a test, nor does he explain how the inability to acquire such a test will immediately and irreparably harm him.

Lastly, the Court notes that Plaintiff is no stranger to the Southern District of California. On August 18, 2022, Plaintiff initiated in this district another action asserting similar claims. *See generally* Docket, *Steinmeyer v. Lab'y Corp. of Am. Holdings*, 3:22-CV-01213-DMS-DDL (S.D. Cal. 2022); *see also Steinmeyer v. Lab'y Corp. of Am. Holdings*, No. 22-CV-01213-DMS-DDL, 2023 WL 3940547, at *1 (S.D. Cal. June 8, 2023) ("Plaintiff claims that Defendants . . . lied to Plaintiff about the validity of the paternity test they administered."). In that case, Plaintiff filed two *ex parte* applications for temporary restraining orders. *See Lab'y Corp. of Am. Holdings*, 3:22-CV-01213-DMS-DDL, ECF Nos. 28, 37. Both applications were denied. *See id.* ECF Nos. 27, 39. In light of this history, the Court advises Plaintiff that further requests for relief in the form of a TRO or preliminary injunction will be denied unless Plaintiff can clearly demonstrate that he is entitled to such relief. *Winter*, 555 U.S. at 22. Based on the record before it, the Court is not inclined to grant preliminary injunctive relief in this matter barring a material change in circumstances or the revelation of facts demonstrating the need and appropriateness of such relief.

## CONCLUSION

In light of the foregoing, the Court **DENIES** Plaintiff's *Ex Parte* Application for Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue (ECF No. 2).

**IT IS SO ORDERED.**

Dated: June 26, 2023

Hon. Janis L. Sammartino
United States District Judge