UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANDALL HENRI STEINMEYER, an individual,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>AMERICAN ASSOCIATION OF BLOOD BANKS,<br><br>　　　　　　　　　Defendant. | Case No.: 23-CV-1160 JLS (BGS)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THE VERIFIED COMPLAINT**<br><br>(ECF No. 14) |

　　　　Presently before the Court are Defendant American Association of Blood Banks' ("Defendant" or "AABB") Motion to Dismiss the Verified Complaint ("Mot.," ECF No. 14), Memorandum of Points in Authorities ("Mem.," ECF No. 14-1) in support thereof, and Request for Judicial Notice ("RJN," ECF No. 14-2). Plaintiff Randall Henri Steinmeyer, appearing *in propria persona*, filed an Opposition to the Motion ("Opp'n," ECF No. 16), and Defendant filed a Reply ("Reply," ECF No. 12). Having considered the Parties' arguments and the law, the Court **GRANTS** Defendant's Motion.

/ / /

/ / /

# BACKGROUND

The Court provided a thorough recitation of this action's factual and procedural background in the September 11, 2023 Order Denying Plaintiff's Motion for Preliminary Injunction (the "Order," ECF No. 15). The Court repeats the relevant facts below, for ease of reference, with the addition of more recent developments.

Plaintiff claims Defendant, an organization that "develops and enforces standards for DNA paternity and other relationship testing," Verified Complaint ("Compl.") ¶ 15, ECF No. 1, has amended its standards to permit "non-traditional" or "lookalike" paternity tests that "(1) violate[] the DOJ Directive to Judges deciding DNA paternity cases[,] (2) violate[] state statutes[,] (3) [are] not peer-reviewed, [and] (4) [were] never validated," *id.* ¶¶ 12–13, 20. Plaintiff alleges that in a "non-traditional" or "lookalike" paternity test, "maternal DNA is removed." *Id.* ¶ 27. Such tests, Plaintiff contends, allow laboratories to issue "faux DNA results concerning biology but call it forensic science," while Defendant "can rubber stamp its seal thereon . . . so the lookalike 'results' can be turned into money in both public and private markets." *Id.* ¶ 23. Plaintiff explains:

> [W]hen these result[s] are used to create fictitious relationships out of activities that never occurred, and then paraded as "positive" evidence of paternity at 99.999% and which the target either (1) knows the result is impossible or (2) discovers the result is fraudulent through a subsequent "forensic" tests, the targeted (adult) may suffer a shaken faith like syndrome with respect to his future lab/medical testing.

*Id.* ¶ 25.

Plaintiff initiated this action on June 22, 2023, asserting causes of action against Defendant for intentional misrepresentation, fraudulent concealment, negligence per se, violation of California's False Advertising Law ("FAL"), and violation of California's Unfair Competition Law ("UCL"). *See id.* ¶¶ 62–89. Plaintiff also seeks "to enjoin the Defendant's fraudulent attempt to switch the standards for commercial DNA testing in the United States." *Id.* ¶ 1.

/ / /

1  Plaintiff previously filed an *Ex Parte* Application for Temporary Restraining Order ("TRO") and Order to Show Cause Why a Preliminary Injunction Should Not Issue ("*Ex Parte* Appl.," ECF No. 2). In the *Ex Parte* Application, Plaintiff requested that the Court "enjoin Defendant from switching the standards for commercial DNA testing in the United States, to a lookalike or []'non-traditional'[] standard." Mem. Supp. *Ex Parte* Appl. ("*Ex Parte* Mem.") at 4, ECF No. 2-1.[1] The Court denied the *Ex Parte* Application, concluding Plaintiff failed to abide by Federal Rule of Civil Procedure 65(b)(1) and Civil Local Rule 83.3(g)(2)'s requirements for the issuance of a TRO. *See generally* ECF No. 4. The Court also noted that Plaintiff had twice requested and been denied emergency injunctive relief in a prior case with similar claims in the Southern District. *Id.* at 7.

On July 25, 2023, Plaintiff filed a Motion for Preliminary Injunction ("Inj. Mot.," ECF No 6), which asked the Court to enjoin Defendant's alleged "[Parent Obligate Allele ("POA")]-based evidentiary standard switch to 'nontraditional.'" Inj. Mot. at 27. The Court denied Plaintiff's Injunction Motion, finding Plaintiff had not shown a likelihood of success on the merits. *See generally* Order.

Defendant's instant Motion and Request for Judicial Notice followed.

## REQUEST FOR JUDICIAL NOTICE

Defendant asks the Court to take judicial notice of five documents, each of which are associated with state and federal court actions to which Plaintiff was a party. RJN at 1. Plaintiff raises no objection. The documents at issue include:

(1) An order for genetic testing issued against Plaintiff in the California Superior Court case *In re K.S.*, No. CJ1363 (Cal. Super. Ct. San Diego Cnty. Mar. 27, 2017). *See* RJN Ex. A, ECF No. 14-3.

(2) A custody order issued in the California Superior Court case *In re K.L.S.*, Nos. CJ1363, 17FL012118C (Cal. Super. Ct. San Diego Cnty. Jan. 31, 2018), indicating

---

[1] Citations to Plaintiff's *Ex Parte* Memorandum refer to the CM/ECF page numbers electronically stamped at the top of each page of the cited filing.

that Plaintiff was adjudged the presumed parent of the at-issue child (the "Child"). *See* RJN Ex. D at 84, ECF No. 14-6.

(3) A docket record from the California Court of Appeal case *In re K.S.*, No. D073380 (Cal. Ct. App. Apr. 3, 2018), reflecting that Plaintiff's appeal from said California superior court case was dismissed for failure to file an opening brief. *See* RJN Ex. B, ECF No. 14-4.

(4) A series of income-withholding orders issued against Plaintiff by the California Superior Court between 2018 and 2019. *See* RJN Ex. E, ECF No. 14-7.

(5) A verified first amended complaint filed by Plaintiff in the federal district court case *Steinmeyer v. Lab'y Corp. of Am. Holdings* (*Steinmeyer I*), No. 22-CV-01213-DMS-DDL, 2023 WL 3940547 (S.D. Cal. June 8, 2023). *See* RJN Ex. C, ECF No. 14-5.

Under Federal Rule of Evidence 201(b), "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." "Accordingly, '[a] court may take judicial notice of matters of public record . . . .'" *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (first alteration in original) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001)). "But a court cannot take judicial notice of disputed facts contained in such public records." *Id.*

The Court **GRANTS** Defendant's RJN as to all Exhibits, as "court filings and orders from other proceedings are proper subjects of judicial notice." *Sierra v. Costco Wholesale Corp.*, 630 F. Supp. 3d 1199, 1208 (N.D. Cal. 2022). In so doing, the Court takes "notice only of the authenticity and existence of" each "order or pleading." *Eidson v. Medtronic, Inc.*, 981 F. Supp. 2d 868, 878 (N.D. Cal. 2013). Conversely, the Court does not take "notice of any of these documents to establish the truth of the underlying factual contention or the accuracy of the legal conclusions set forth therein." *Pac. Marine Ctr., Inc. v. Philadelphia Indem. Ins. Co.*, No. 113CV00992DADSKO, 2016 WL 8730668, at *4 (E.D. Cal. Mar. 18, 2016).

# MOTION TO DISMISS

## I. Legal Standards

### A. *Federal Rule of Civil Procedure 12(b)(1)*

Federal courts are courts of limited jurisdiction and thus have an obligation to dismiss claims for which they lack subject-matter jurisdiction. *Demarest v. United States*, 718 F.2d 964, 965–66 (9th Cir. 1983). The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

Under Federal Rule of Civil Procedure 12(b)(1), a party may raise by motion the defense that the complaint lacks subject-matter jurisdiction, and may do so via a facial or factual attack. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A court resolves a facial attack as it would under Rule 12(b)(6) motion: "Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient . . . to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

In a factual attack, on the other hand, "the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039. In such challenges, courts (1) "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment," and (2) "need not presume the truthfulness of the plaintiff's allegations." *Id.* After the moving party evidences the lack of subject-matter jurisdiction, the party opposing the motion must "present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989).

Dismissal under Rule 12(b)(1) is warranted "where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the

purpose of obtaining federal jurisdiction or where such claim is wholly insubstantial and frivolous." *Safe Air*, 373 F.3d at 1039 (quoting *Bell v. Hood*, 327 U.S. 678, 682–83 (1946)). But dismissal under 12(b)(1) is not appropriate when "the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits of the action." *Sun Valley Gasoline, Inc. v. Ernst Enter., Inc.*, 711 F.2d 138, 139 (9th Cir. 1983) (internal quotation marks omitted) (quoting *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983)).

### B.     *Federal Rule of Civil Procedure 12(b)(6)*

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted." To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557).

Though this plausibility standard "does not require 'detailed factual allegations,' . . . it [does] demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). A complaint will not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 557). Put differently, "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Review under Rule 12(b)(6) requires a context-specific analysis involving the Court's "judicial experience and common sense." *Iqbal*, 556 U.S. at 679. In performing that analysis, "a district court must accept as true all facts alleged in the complaint" and "draw all reasonable inferences in favor of the plaintiff." *Wi-LAN Inc. v. LG Elecs., Inc.*,

382 F. Supp. 3d 1012, 1020 (S.D. Cal. 2019). If a complaint does not survive Rule 12(b)(6), a court grants leave to amend unless it determines that no modified contention "consistent with the challenged pleading could . . . possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

## C. Applicability of a Deferential Pleading Standard

Ordinarily, courts have a duty to construe a pro se[2] litigant's pleadings liberally. *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000). That liberal pleading standard, however, does not apply to pro se "practicing attorneys." *Huffman v. Lindgren*, 81 F.4th 1016, 1021 (9th Cir. 2023). To the extent solicitude extends to plaintiffs who have attended law school or have past litigation experience, said solicitude is generally reduced. *See id.* at 1020–21; *see also Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010) ("[T]he degree of solicitude may be lessened where the [litigant proceeding pro se] is experienced in litigation and familiar with the procedural setting presented.").

As Defendant points out, and Plaintiff does not dispute, Plaintiff was until recently a practicing attorney in the State of Minnesota. *See Lawyer Details*, Minn. Judicial Branch, https://mars.courts.state.mn.us/AttorneyDetail.aspx?attyID=0270933 (last visited Jan. 23, 2024). In fact, Plaintiff was admitted to the Minnesota State Bar in 1996 and did not leave until he failed to pay his fees in 2021. *See id.*

To the Court's knowledge, the Ninth Circuit has never determined whether a *former* attorney deserves the grace granted to other pro se individuals. District courts, meanwhile, have expressed different views.[3] Without binding precedent, the Court turns to *Huffman*

---

[2] Plaintiff is appearing *in propria persona*. In the context of self-representation, "[t]he phrases *in propria persona* and *pro se* are synonymous." *Stoner v. Santa Clara Cnty. Off. of Educ.*, 502 F.3d 1116, 1120 n.1 (9th Cir. 2007).

[3] *Compare Torres v. City of Laguna Niguel*, No. SACV 07-736 GW JWJ, 2009 WL 5184467, at *5 (C.D. Cal. Dec. 21, 2009) (finding "Plaintiff's Complaint need not be interpreted liberally before dismissal" because "Plaintiff is a former attorney"), *with Paulson v. Fairway Am. Corp.*, No. 1:14-CV-1544-CL, 2015 WL 588851, at *9 (D. Or. Feb. 11, 2015) ("While Plaintiff is a former attorney, he is no longer a member of the Oregon State Bar, and therefore the Court will afford him the benefit of the doubt due a pro se litigant.").

for guidance. In that case, the Ninth Circuit explained pro se parties are "afford[ed] leeway" because they are "[p]resumably unskilled in the law" and "more prone to making errors in pleading than the person who benefits from the representation of counsel." *Huffman*, 81 F.4th at 1021 (quoting *Lopez*, 203 F.3d 1122). The same reasoning, the court held, "does not apply to practicing attorneys." *Id.*

*Huffman*'s logic counsels against solicitude in this case. As Plaintiff is a former attorney with decades of experience, the Court sees no reason to suspect Plaintiff is unskilled in the law or as prone to error as litigants lacking his legal training. Nor does Plaintiff attempt to convince the Court otherwise, even though Defendant raised the issue in the instant Motion. *See* Mem. at 3–4; *see generally* Opp'n. The Court thus declines to extend the benefit of a liberal pleading standard to Plaintiff.

## II.   Analysis

Defendant argues the Complaint must be dismissed because it fails to satisfy several initial requirements. The Court must thus decide the order in which to tackle Defendant's arguments. Two threshold issues raised by Defendant—the *Rooker-Feldman* doctrine and Article III standing—go to the Court's subject matter jurisdiction. *See Brown v. Duringer L. Grp. PLC*, 86 F.4th 1251, 1255 n.1 (9th Cir. 2023). A third, issue preclusion, does not. *See Snoqualmie Indian Tribe v. Washington*, 8 F.4th 853, 861 (9th Cir. 2021).

Courts may address non-merits threshold issues before jurisdictional questions when doing so is "less burdensome." *Id.* at 863. Here, *Rooker-Feldman* does not pose a particularly arduous question, so the Court will start there. That leaves standing and issue preclusion. Defendant's issue-preclusion argument targets all of Plaintiff's claims, while Defendant's standing theory applies differently to the various injuries alleged in the Complaint. Further, Defendant's standing claim *relies* on its issue preclusion argument, *see* Mem. at 4–5, complicating the Court's ability to assess standing before preclusion. Finally, Plaintiff did not respond to the Motion's specific standing arguments; instead, he incorporated a section of an earlier brief relating to a different motion. *See* Opp'n at 13. Plaintiff's Opposition does, however, take on issue preclusion. *See id.* at 14.

With the above in mind, the Court will begin by addressing Defendant's *Rooker-Feldman* argument. The Court will then turn to issue preclusion—as it applies broadly to Plaintiff's claims, is central to Defendant's theory of standing, and has been fully briefed by the Parties—before concluding with an inquiry into Plaintiff's constitutional standing.

### A. *Rooker-Feldman*

Under the *Rooker-Feldman* doctrine, "a federal district court does not have subject matter jurisdiction to hear a direct appeal from the final judgment of a state court." *See Noel v. Hall*, 341 F.3d 1148, 1154 (9th Cir. 2003); *see also Rooker v. Fidelity Tr. Co.*, 263 U.S. 413 (1923); *Dist. of Columbia Ct. of App. v. Feldman*, 460 U.S. 462 (1983). *Rooker-Feldman* also bars federal courts from "exercising subject matter jurisdiction over a suit that is a de facto appeal from a state court judgment." *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1139 (9th Cir. 2004). The doctrine is narrow, as an action qualifies as a de-facto appeal only when the "plaintiff both asserts as her injury legal error or errors by the state court *and* seeks as her remedy relief from the state court judgment." *Id.* at 1140. Plaintiffs bringing a "forbidden de facto appeal" are, however, also prohibited from litigating "issue[s] that [are] 'inextricably intertwined' with the state court judicial decision from which" said appeal is brought. *Noel*, 341 F.3d at 1158.

Defendant contends that Plaintiff's tort claims (for intentional misrepresentation, fraudulent concealment, and negligence per se) are barred by *Rooker-Feldman*, as adjudicating those claims would require the Court to review the state court's paternity proceeding and the orders issued therein. *See* Mem. at 9–10. Defendant's argument relies on the idea that Plaintiff's claims are "inextricably intertwined" with the state court's judgment. *Id.* at 10.

Though not without some logical appeal, Defendant's argument is based on a faulty premise. "Only when there is already a forbidden de facto appeal in federal court does the 'inextricably intertwined' test come into play . . . ." *Noel*, 341 F.3d at 1158. Such a de-facto appeal arises when a plaintiff "allege[s] a legal error by the state court as the basis for [the] relief" they seek. *Kougasian*, 359 F.3d at 1140. But Plaintiff's tort causes of

action allege wrongdoing by *Defendant*, not legal error by the state court. *See* Compl. at 23–28. Plaintiff's suit thus does not constitute a de-facto appeal under *Rooker-Feldman*. *See Kougasian*, 359 F.3d at 1143 ("In this case, Kougasian has asserted no legal error by the state court. She is therefore not bringing a de facto appeal . . . .").

Accordingly, though the issues raised in Plaintiff's Complaint are closely connected to those addressed in state court, *Rooker-Feldman* does not bar his claims. *See id.* ("[E]ven though [plaintiff's] remaining four causes of action *are essentially identical* to the causes of action already adjudicated in [state court], *Rooker-Feldman* does not bar [her] federal suit . . . . (emphasis added)); *see also Sarale v. Pac. Gas & Elec. Co.*, No. 2:14-CV-02573-TLN-CKD, 2015 WL 13236884, at *5 (E.D. Cal. Dec. 11, 2015) ("Because there is not an underlying forbidden de facto appeal, the issues intertwined with the state court decision in the instant case may not be dismissed under *Rooker-Feldman*."), *aff'd sub nom. Sarale v. Cal. Indep. Sys. Operator Corp.*, 705 F. App'x 614 (9th Cir. 2017).

### B. Issue Preclusion

#### 1. Legal Framework

Issue preclusion, also known as collateral estoppel, "bars the relitigation of issues actually adjudicated in previous litigation." *Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1320 (9th Cir. 1992). Federal courts "considering whether to apply issue preclusion based on a prior state court judgment must look to state preclusion law." *Hardwick v. Cnty. of Orange*, 980 F.3d 733, 740 (9th Cir. 2020) (quoting *McInnes v. California*, 943 F.2d 1088, 1092–93 (9th Cir. 1991)).

Relevant here is California law, under which issue preclusion applies "(1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party." *Samara v. Matar*, 419 P.3d 924, 926 (Cal. 2018) (quoting *DKN Holdings LLC v. Faerber*, 352 P.3d 378, 387 (Cal. 2015)). Even when those elements are met, however, preclusion will not apply under certain circumstances. "[P]reclusion exceptions include public policy, unforeseeability, and the inability or lack of incentive to litigate the prior

adjudication." *In Re CWS Enterprises, Inc.*, 870 F.3d 1106, 1119 n.37 (9th Cir. 2017) (citing *Olson v. Cory*, 184 Cal. Rptr. 325, 336 n.9 (Ct. App. 1982)).

Courts often "look[] to the record of the prior proceeding to determine whether an issue was in fact raised, contested, and submitted for determination." *Janjua v. Neufeld*, 933 F.3d 1061, 1065 (9th Cir. 2019). The party seeking to rely upon issue preclusion carries the burden of proving that each element has been met. *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1050–51 (9th Cir. 2008). However, "[t]he party seeking the benefit of the doctrine . . . need not have been a party to the earlier lawsuit." *Arias v. Superior Ct.*, 209 P.3d 923, 932 (Cal. 2009).

### 2.    *Defendant's Theory*

Defendant contends that each of Plaintiff's claims are based on the argument that Plaintiff is not the Child's father. *See* Mem. at 6–8. The truth of Defendant's assertion is not obvious when first glancing at the Complaint, which contains impressively vague descriptions of Plaintiff's alleged injuries and damages. But on closer inspection, Defendant's argument finds firm footing. For example, the Complaint suggests Plaintiff's was injured financially because he "would have requested an actual scientific paternity test," which "would have excluded him as the alleged father," had he known of Defendant's supposed misconduct. Compl. ¶ 67. Additionally, Plaintiff argues he has standing because a favorable verdict would stop the ongoing "taking" of Plaintiff's property—presumably a reference to the state-court-ordered child support payments discussed below. Pl.'s Reply Supp. Inj. Mot. ("Inj. Reply") at 6, ECF No. 12.[4] And perhaps most tellingly, Plaintiff does not dispute that his claims rely on challenging the state court's paternity determination. *See* Opp'n at 14.

The Court thus accepts, with one caveat, the undisputed contention that the Complaint seeks to hold Defendant accountable for the allegedly erroneous paternity

---

[4] Plaintiff's Opposition incorporates by reference this standing argument from his Injunction Reply. *See* Opp'n at 13.

ruling. The Court agrees with Defendant—based on the Complaint's language—that the *financial* losses Plaintiff alleges flow directly from the state court's determination that he is the father of the Child. The Court sees less of a connection, however, between Plaintiff's claims for prospective relief (to stop Defendant from continuing its alleged misconduct) and the paternity ruling. The Court will therefore proceed to ask whether, as Defendant argues, Plaintiff is precluded from premising his damages claims on the contention that he is not the father of the Child.

        3.     *Discussion*

To support its preclusion claim, Defendant points to the state paternity proceeding's records. On March 24, 2017, a California superior court judge ordered Plaintiff to submit to genetic testing to determine the paternity of the Child. *See* RJN Ex. A. Then, on January 18, 2018, the same court issued a "Custody Order" and "Final Judgment" labeling Plaintiff the "presumed father" of the Child. *See* RJN Ex. D at 83–84. And while the confluence of those events alone strongly suggests—if not outright shows—that the state court decided the paternity question, additional evidence removes any doubt. First, the California court issued an "Income Withholding Order" requiring Plaintiff to pay child support, *see* RJN Ex. E, and a duty to support a child arises once paternity is established, *see Cnty. of Los Angeles v. Christopher W.*, 254 Cal. Rptr. 3d 565, 571 (Ct. App. 2019); *see also Galvan ex rel. Galvan v. Heckler*, No. C 84-6726 TEH, 1985 WL 71748, at *4 (N.D. Cal. Aug. 15, 1985) ("[P]aternity is a prerequisite to the duty of support."). Further, Plaintiff confirmed in a verified complaint—filed based on the same facts against different defendants in a separate suit—that "[J]udge Bubis[5] announced that the biological results show Plaintiff as the biological father" on April 18, 2017. RJN Ex. C ¶ 71.

Defendant has satisfied its burden to establish the elements of issue preclusion. As to the first element, records indicate that the superior court issued a final judgment—

---

[5] Notably, the January 2018 "Custody Order" was also signed by Judge Bubis. *See* RJN Ex. D at 85.

*i.e.*, that the matter was subject to a final adjudication.⁶ As to the second and third elements, the above evidence shows that the issue here—paternity of the Child—is identical to one actually litigated and necessarily decided in the state proceedings. The California Superior Court's records also indicate that said issue was decided against Plaintiff, the same party against whom preclusion is currently levied. And notably, there is no issue preclusion exception in California relating to paternity determinations. *See In re Donovan L.*, 198 Cal. Rptr. 3d 550, 557–558 (Ct. App. 2016).

Neither of Plaintiff's counterarguments change the Court's conclusion. Plaintiff first contends that as the "actual" test results were never disclosed in the state proceedings, the issue presented in this case could not have been raised or contested previously. *See* Opp'n at 14. This argument suggests Plaintiff misunderstands the "issue" under discussion. Underlying Plaintiff's claims for damages is the contention that, due to Defendant's conduct, Plaintiff (1) was erroneously found to be the father of the Child, and (2) suffered financial losses as a result. *See, e.g.*, ¶¶ 67–68. But Plaintiff is precluded from disputing the former, so he cannot seek damages as measured by the latter. That the genetic test's results were supposedly not disclosed during the state court proceedings does not change the fact that the state superior court ruled against Plaintiff on the paternity issue.

Plaintiff next invokes preclusion's extrinsic fraud exception and argues that "because AABB destroyed the paternity evidence, Plaintiff was unable to present his defense" in state court. Opp'n at 14. He fails, however, to offer a single case or fact to support this claim, and the Court is not inclined to flesh out arguments when Plaintiff neglected to. Nevertheless, the Court notes the Complaint does not allege that Defendant destroyed any evidence, nor does Plaintiff explain why the alleged destruction of evidence

---

⁶ This finding is further confirmed by records showing Plaintiff appealed the state court decision on January 23, 2018. *See* RJN Ex. B. The First Division of California's Fourth Appellate District dismissed said appeal on April 3, 2018—after Plaintiff failed to timely file his briefing—and the case was formally labeled "complete" on June 6 of the same year. *Id.*

prevented him from challenging the state court's decision.[7]  In any event, California courts categorize the suppression of evidence as *intrinsic*, not extrinsic, fraud.  *Kearney v. Foley & Lardner, LLP*, 747 F. App'x 478, 480 (9th Cir. 2018) (citing *Eichman v. Fotomat Corp.*, 197 Cal. Rptr. 612, 614–15 (Ct. App. 1983)).  So, in California, "a judgment may not be collaterally attacked on the ground that evidence was falsified or destroyed." *Cedars-Sinai Med. Ctr. v. Sup. Ct.*, 954 P.2d 511, 516 (Cal. 1998).

Accordingly, the Court holds that Plaintiff is precluded from basing his claims for monetary damages on the contention that he is not the father of the Child.  As Plaintiff's claims for intentional misrepresentation, fraudulent concealment, and negligence per se appear to rely solely on relitigating that fact to prove injury and damages, said claims are **DISMISSED**.[8]  To the extent Plaintiff's false advertising and UCL claims seek monetary compensation for the same alleged injury, they also fail.

### C. *Article III Standing*

After addressing *Rooker-Feldman* and issue preclusion, aspects of the Complaint's fifth, sixth, and seventh counts remain.  The Court thus proceeds to the question of Article III standing.

#### 1. *Legal Framework*

Article III standing is another "jurisdictional prerequisite to the consideration of any federal claim."  *Gerlinger v. Amazon.com Inc.*, 526 F.3d 1253, 1255 (9th Cir. 2008) (citation omitted).  The elements of constitutional standing are "injury-in-fact, causation, and redressability." *Id.*  More specifically, a plaintiff must "show (1) she has suffered an

---

[7] Beyond the appeal Plaintiff initiated but did not complete, *see* RJN Ex. B, it appears Plaintiff had the opportunity to "challenge the genetic testing results" by submitting results achieved by use of "other genetic test[s]" satisfying California's statutory requirements, Cal. Fam. Code § 7555.

[8] *See Kearney*, 747 F. App'x at 481 (concluding claim failed because (1) injury to property was an element of said claim, and (2) plaintiff was precluded from relitigating the existence of such an injury by an earlier finding that she received fair compensation for her property); *cf. NTCH-WA, Inc. v. ZTE Corp.*, No. 2:12-CV-3110-TOR, 2017 WL 3994792, at *10 n.11 (E.D. Wash. Sept. 11, 2017), *aff'd*, 921 F.3d 1175 (9th Cir. 2019) (explaining that as a claim required proof of damages, but a prior proceeding found no damages had occurred, said claim failed under the doctrine of issue preclusion).

'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Fleming v. Charles Schwab Corp.*, 878 F.3d 1146, 1150 (9th Cir. 2017) (quoting *Bernhardt v. Cnty. of Los Angeles*, 279 F.3d 862, 868–69 (9th Cir. 2002)).

For purposes of the injury-in-fact inquiry, an injury is sufficiently particularized if it "affect[s] the plaintiff in a personal and individual way," and is "concrete" if it bears a "close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339, 341 (2016). For instance, "[i]f a defendant has caused physical or monetary injury to the plaintiff, the plaintiff has suffered a concrete injury" under Article III. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). Intangible harms—*e.g.*, "reputational harms" or "intrusion upon seclusion"—may also qualify as concrete so long as they satisfy *Spokeo*'s requirements. *Id.*

Regarding prospective relief, a plaintiff seeking an injunction to protect against future injury "has standing to sue 'if the threatened injury is "certainly impending," or there is a "substantial risk" that the harm will occur.'" *In re Zappos.com, Inc.*, 888 F.3d 1020, 1024 (9th Cir. 2018) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). Put differently, a plaintiff must allege that they face an "imminent or actual threat of future harm" due to the defendant's conduct. *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 970 (9th Cir. 2018).

A plaintiff bears the burden of establishing he has standing to bring the claims asserted, *Takhar v. Kessler*, 76 F.3d 995, 1000 (9th Cir.1996), and must demonstrate standing "for each claim he seeks to press" and for each form of relief he requests, *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). The plaintiff's burden varies with the "manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). So, at the pleading stage, "the plaintiff

15

must 'clearly . . . allege facts demonstrating' each element" of standing. *Spokeo*, 578 U.S. at 338 (alteration in original) (quoting *Warth v. Seldin,* 422 U.S. 490, 518 (1975)).

### 2. Discussion

Beyond the damages addressed in Section II.B, *supra*, Plaintiff's remaining claims seek injunctive and declaratory relief preventing Defendant from changing its testing standards and otherwise continuing its alleged misconduct. Compl. ¶¶ 84, 88, 93. To that end, Plaintiff argues he has sufficiently alleged injury-in-fact in four ways. *See* Inj. Reply at 6.[9] The Court does not consider his first argument, that his "cash and home" have been taken, as it is relevant only to his dismissed claims for retrospective and individual damages. Plaintiff otherwise argues that he has standing due to (1) shaken faith syndrome, (2) the potential injury posed by Defendant's attempt to "change its standard" going forward, and (3) the fact that Defendant's staff member "is obstructing [Plaintiff's] July 2023 paternity test." *Id.* The Court addresses each claim in turn.

#### a. Shaken Faith Syndrome.

Plaintiff first argues that he has suffered and continues to suffer from shaken faith syndrome. Specifically, Plaintiff contends that after receiving the results of the allegedly fraudulent test, Plaintiff's "faith" in "his future lab/medical testing" was so "shaken" that Plaintiff "left the State of California and eventually the United States to have testing related to cancer," which resulted in "delayed surgeries and testing which could have been fatal." Compl. ¶¶ 25–26. But Plaintiff's argument is ill-taken, as shaken faith syndrome does not constitute an injury in fact; Plaintiff makes no effort to argue that shaken faith in the medical establishment "bears a close relationship to harms traditionally recognized as a basis for lawsuits," *see TransUnion*, 594 U.S. at 425, nor does the Court see such a close relationship.[10] Plaintiff's alleged ongoing shaken faith thus does not constitute the kind of

---

[9] The Court again notes that Plaintiff's Opposition refers the Court to his "Reply in Support of Preliminary Injunction" for his thoughts on standing. Opp'n at 13.

[10] For the same reason, Plaintiff's individual damages claims would fail for lack of standing to the extent Plaintiff may have sought to base those claims on his alleged shaken faith.

imminent threat required by Article III to create standing to pursue injunctive relief.

       b.  Threat of Future Harm from Defendant's Conduct

  Plaintiff next tries to establish a qualifying injury by citing Defendant's alleged desire to change its testing standard. *See* Inj. Reply at 6. Though not the model of clarity, Plaintiff appears to be contending that he has standing because Defendant's practices are likely to cause future injury to Plaintiff personally and to the public at large. Neither argument, however, holds water.

  As to Plaintiff himself, the Complaint alleges he will "likely be subjected to more injury, fraud, theft, and other harms." Compl. ¶ 94. But even at the pleading stage, those conclusory and speculative allegations are insufficient. *See Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011) (noting plaintiffs cannot "rely on a bare legal conclusion to assert injury-in-fact"). The Complaint lacks allegations to even suggest Plaintiff faces the risk of future harm, such as that he wants to purchase—or might submit to—another test stamped by Defendant. *See Davidson*, 889 F.3d at 969 (explaining that a "previously deceived consumer may have standing to seek an injunction against false advertising" if she "plausibl[y] alleg[es]" (1) she "will not purchase the product[,] although she would like to," due to unreliable advertising; or (2) "she might purchase the product in the future" and be fooled once more). Mere awareness of allegedly misleading marketing does not confer standing on its own. *See Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1107–08 (N.D. Cal. 2017).

  To the extent Plaintiff seeks a public injunction,[11] as Defendant suspects, *see* Mem. at 17, Plaintiff's claims of imminent future harm to the public are similarly speculative and unsupported by factual allegations. That problem aside, Plaintiff faces another hurdle.

---

[11] "The public injunction is a creature of California law that 'has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public.'" *Rogers v. Lyft, Inc.*, 452 F. Supp. 3d 904, 919 (N.D. Cal. 2020) (quoting *McGill v. Citibank, N.A.*, 393 P.3d 85, 90 (Cal. 2017)), *aff'd*, No. 20-15689, 2022 WL 474166 (9th Cir. Feb. 16, 2022). "[A] public injunction benefits the general population in equal shares (for example, by enjoining false advertising or deceptive labeling that could trick any member of the public)." *Id.* at 921.

"Plaintiffs may sometimes request public injunctive relief in the course of combating an actual and imminent threat of future harm to themselves." *Rogers v. Lyft, Inc.*, 452 F. Supp. 3d 904, 919 (N.D. Cal. 2020) (citing *Davidson*, 889 F.3d at 969–70), *aff'd*, No. 20-15689, 2022 WL 474166 (9th Cir. Feb. 16, 2022). But here, Plaintiff has not established a cognizable threat of future *personal* harm. And Plaintiff may not "use the federal courts merely to pursue a generalized public grievance," even if a state law purports to allow otherwise. *Id.* at 919–920.

                c.      Obstruction of July 2023 Test

Lastly, Plaintiff argues he has standing because "a core AABB member is obstructing his July 2023 paternity test." Inj. Reply at 6. The Complaint is, however, devoid of any reference to a July 2023 paternity test or efforts to obstruct such a test. Nor does Plaintiff provide any factual allegations to explain why these hypothetical obstruction efforts might threaten him with imminent harm. As Plaintiff cannot establish constitutional standing based on conclusory statements—let alone those absent from his Complaint—the Court rejects Plaintiff's final argument.

## CONCLUSION

In light of the foregoing, the Court **GRANTS** Defendant's Motion to Dismiss (ECF No. 14). The Complaint's intentional misrepresentation, fraudulent concealment, negligence per se, false advertising, and unfair competition claims are **DISMISSED WITH PREJUDICE** to the extent they seek damages flowing from the California superior court's allegedly erroneous determination that Plaintiff is the Child's father—an issue Plaintiff is precluded from relitigating.[12] The Complaint's remaining claims are **DISMISSED WITHOUT PREJUDICE** for lack of standing to pursue injunctive and declaratory relief. *See Frigard v. United States*, 862 F.2d 201, 204 (9th Cir. 1988)

---

[12] If Plaintiff wishes to raise the tort claims in an amended complaint seeking compensation for a different injury—*i.e.*, one involving damages that are not measured by the money Plaintiff has lost as a result of the state court's paternity ruling—this Court's issue preclusion determination does not prevent him from doing so.

("Ordinarily, a case dismissed for lack of subject matter jurisdiction should be dismissed without prejudice . . . .").

As the Court cannot definitively conclude doing so would be futile, the Court will provide Plaintiff the opportunity to amend. *See Lopez*, 203 F.3d at 1130. <u>Within twenty-one (21) days</u> of the date of this Order, Plaintiff either **(1) SHALL FILE** an amended complaint, or **(2) SHALL INDICATE** to the Court that he will not do so. ***Failure to timely select either of the above options may result in the dismissal of this action pursuant to Federal Rule of Civil Procedure 41(b)***. *See Applied Underwriters, Inc. v. Lichtenegger*, 913 F.3d 884, 890–91 (9th Cir. 2019) (explaining courts may dismiss an action under Rule 41(b) when a plaintiff fails to comply with a court order requiring the filing of an amended complaint). Any amended complaint must be complete in and of itself without reference to Plaintiff's original Complaint; claims not realleged in the amended complaint will be considered waived. *See* S.D. Cal. CivLR 15.1; *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting claims dismissed with leave to amend that are not realleged in an amended pleading may be "considered waived").

**IT IS SO ORDERED.**

Dated: February 8, 2024

Hon. Janis L. Sammartino
United States District Judge