1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

SOUTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  RANDALL HENRI STEINMEYER,<br>12  an individual,<br>13  Plaintiff,<br>14  v.<br>15  AMERICAN ASSOCIATION OF<br>16  BLOOD BANKS, MARCIA<br>17  EISENBERG, and DIANE KILLION,<br>18  Defendants. | Case No.:  23-CV-1160 JLS (DTF)<br><br>**ORDER:**<br><br>**(1) GRANTING DEFENDANTS'<br>MOTIONS TO DISMISS, AND**<br><br>**(2) DENYING PLAINTIFF'S<br>SECOND MOTION FOR RULE 11<br>SANCTIONS**<br><br>(ECF Nos. 46, 53, 61) |

21      Presently before the Court are Defendants American Association of Blood Banks

22  ("AABB") and Diane Killion's (collectively, "AABB Defendants") Motion to Dismiss

23  Second Amended Complaint ("AABB MTD," ECF No. 53) and Memorandum of Points

24  and Authorities in Support Thereof ("AABB Mem.," ECF No. 53-1).  Plaintiff Randall

25  Steinmeyer filed an Opposition ("AABB Opp'n," ECF No. 56) to the Motion, and the

26  AABB Defendants filed a Reply ("AABB Reply," ECF No. 58).  Also before the Court are

27  Defendant Marcia Eisenberg's ("Dr. Eisenberg") Motion to Dismiss Plaintiff's Second

28  Amended Complaint ("Eisenberg MTD," ECF No. 61), to which Plaintiff filed an

Opposition ("Eisenberg Opp'n," ECF No. 63) and Dr. Eisenberg filed a Reply ("Eisenberg Reply," ECF No. 66), and Plaintiff's Second Motion for Rule 11 Sanctions ("Sanctions Mot.," ECF No. 46), to which AABB filed an Opposition ("Sanctions Opp'n," ECF No. 47) and Plaintiff filed a Reply ("Sanctions Reply," ECF No. 51). The Court previously took all three Motions under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1). ECF Nos. 50, 57, 65. Having carefully considered the Second Amended Complaint ("SAC," ECF No. 48), the Parties' arguments, and the law, the Court (1) **GRANTS** the AABB Defendants' Motion to Dismiss, (2) **GRANTS** Dr. Eisenberg's Motion to Dismiss, and (3) **DENIES** Plaintiff's Second Motion for Rule 11 Sanctions.

## BACKGROUND

Plaintiff's SAC largely duplicates factual allegations already pled twice before, first in Plaintiff's Complaint ("Compl.," ECF No. 1), and later in his First Amended Complaint ("FAC," ECF No. 21). There is, thus, little need for the Court to rehash the factual background of this case as the Parties are well-aware of the nature of Plaintiff's claims. For the sake of completeness, however, the Court states below the relevant facts and procedural background.

AABB, a non-profit organization headquartered in Maryland, "develops and enforces standards for DNA paternity and other relationship testing." SAC ¶ 14. According to Plaintiff, AABB sets testing standards, which are "mandatory" regulations that independent testing laboratories—like Labcorp and DNA Diagnostics Center ("DDC")—must follow. *Id.* ¶ 59. To sum up Plaintiff's narrative concisely, AABB allegedly took part in a discriminatory, collusive effort with its partner laboratories to rig paternity tests nationwide "in favor of one class of citizen, female, and against another class, male." *Id.* ¶ 32.

This alleged scheme, according to Plaintiff, had a harmful impact on proceedings related to Plaintiff's supposed paternity of a child that took place in state court between 2017–2018. As described by the Court in its Order dismissing Plaintiff's initial Complaint, on "March 24, 2017, a California superior court judge ordered Plaintiff to submit to genetic

testing to determine the paternity of the Child. Then, on January 18, 2018, the same court issued a 'Custody Order' and 'Final Judgment' labeling Plaintiff the 'presumed father' of the Child." ECF No. 20 at 12 ("First MTD Order") (internal citations omitted). Plaintiff alleges this paternity determination was the specious consequence of a "bait-and-switch scheme" whereby the laboratories from which he sought paternity tests provided what Plaintiff refers to as Mother-not-Tested lookalike tests ("MNT Tests") rather than true paternity tests. SAC ¶¶ 33, 35–37. True paternity tests, says Plaintiff, include maternal DNA and can determine paternity with certainty, whereas MNT Tests, which are analyzed in the absence of maternal DNA, "cannot make an 'is' determination," and thus cannot be considered true paternity tests. *Id.* ¶¶ 22, 25, 92.

Unwilling to accept the paternity results, Plaintiff undertook significant efforts to investigate the tests' accuracy. Despite the superior court judge's final judgment with respect to Plaintiff's paternity determination being issued in January 2018, Plaintiff alleges he did not "obtain[] his physical MNT result itself for the first time" until January 2019. *Id.* ¶ 79. Then, over a full year later in March 2020, Plaintiff alleges he inquired as to the validity of his results with the AABB Chairman, who staged a fraudulent investigation that revealed no reason to doubt the paternity results. *Id.* ¶¶ 84–86. Unsatisfied with the AABB investigation, in July 2022, Plaintiff filed an FDA citizen petition "to ban the MNT and replace Defendant AABB as the regulator." *Id.* ¶ 88. Throughout the course of the FDA proceedings, Plaintiff alleges AABB willfully made numerous false statements about the MNT Tests and about Plaintiff himself. *See id.* ¶¶ 90–101. Later, in August 2024, Plaintiff alleges he "discovered Defendants Eiserberg [sic] and Killion, together with AABB agreed to disguise MNT Tests, including Plaintiff[']s, as paternity tests and to rig the appearance of evidence in these cases against males and for females." *Id.* ¶ 131. Dr. Eisenberg, for context, is Labcorp's Chief Science Officer, *id.* ¶ 15, and Killion is AABB's General Counsel, *id.* ¶ 16.

/ / /

/ / /

Unsuccessful in challenging the paternity determination through administrative pathways, Plaintiff took to the federal courts.[1]  He first sued Labcorp along with several other individuals in this Court in August 2022, but that case was dismissed on June 8, 2023. *Steinmeyer v. Lab'y Corp. of Am. Holdings*, 676 F. Supp. 3d 851, 856 (S.D. Cal. 2023). Two weeks later, Plaintiff filed the instant suit against AABB, asserting claims for intentional misrepresentation, fraudulent concealment, negligence, violation of California's False Advertising Law, violation of California's Unfair Competition Law, and injunctive and declaratory relief.  *See* Compl. ¶¶ 62–95.  The Court initially dismissed all of Plaintiff's claims as collaterally estopped to the extent they sought retrospective relief for money damages arising out of the paternity determination.  First MTD Order at 14. Specifically, the Court "accept[ed] . . . the undisputed contention that the Complaint seeks to hold [AABB] accountable for the allegedly erroneous paternity ruling," and under that premise, it held "that Plaintiff is precluded from basing his claims for monetary damages on the contention that he is not the father of the Child."  *Id.* at 11, 14.  But the Court granted Plaintiff leave to amend his Complaint, leaving open the option of re-raising his tort claims to the extent they sought "damages that are not measured by the money Plaintiff has lost as a result of the state court's paternity ruling."  *Id.* at 18 n.12.

Plaintiff filed his First Amended Complaint, re-alleging the same claims as before without "alter[ing] them in any way, shape, or form."  ECF No. 45 ("Second MTD Order") at 8.  These claims the Court dismissed with prejudice.  *Id.*  But Plaintiff also asserted new claims for unjust enrichment, monopolization, tortious interference with contract, tortious interference with prospective advantage, and public nuisance.  FAC ¶¶ 181–267.  As the Court held with respect to the initially asserted claims, the new claims for unjust enrichment, tortious interference with contract, and public nuisance were similarly barred by issue preclusion because "[d]espite lengthy allegations of how Defendant interfered

---

[1] Plaintiff, by this time, had already appealed the state court decision to the First Division of California's Fourth Appellate District, who dismissed his appeal on April 3, 2018.  MTD 1 at 13 n.6.

with Plaintiff's ability to obtain a true paternity test, nowhere does the [FAC] allege that said interference caused Plaintiff any injury other than an erroneous paternity determination."  Second MTD Order at 10.  The Court also dismissed with prejudice the antitrust claims and the tortious interference with prospective economic advantage claim.  *Id.* at 18, 20.  But despite the noted deficiencies, the Court granted Plaintiff leave to amend his unjust enrichment, tortious interference with contract, and public nuisance claims once again.

In response, Plaintiff filed his Second Amended Complaint on September 23, 2024, prompting the instant Motions to Dismiss.  ECF Nos. 48, 53, 61.  He again asserts claims for unjust enrichment, tortious interference with contract, and public nuisance, SAC ¶¶ 154–213, but this time around he adds new claims for defamation, conspiracy to defame, battery, and violation of 42 U.S.C. § 1985(2), *id.* ¶¶ 231.  He also adds as two new Defendants Dr. Marcia Eisenberg and Diane Killion.  *Id.* ¶¶ 15–16.  The AABB Defendants moved to dismiss the SAC on October 14, 2024, and Dr. Eisenberg separately moved to dismiss the SAC on December 5, 2024.  ECF Nos. 53, 61.

## MOTIONS TO DISMISS

### I.    Legal Standards

#### A.    *Federal Rule of Civil Procedure 12(b)(1)*

Federal courts are courts of limited jurisdiction and thus have an obligation to dismiss claims for which they lack subject-matter jurisdiction.  *Demarest v. United States*, 718 F.2d 964, 965–66 (9th Cir. 1983).  The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

Under Federal Rule of Civil Procedure 12(b)(1), a party may raise by motion the defense that the complaint lacks subject-matter jurisdiction, and may do so via a facial or factual attack.  *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039

(9th Cir. 2004). A court resolves a facial attack as it would under Rule 12(b)(6) motion: "Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient . . . to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

Dismissal under Rule 12(b)(1) is warranted "where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining federal jurisdiction or where such claim is wholly insubstantial and frivolous." *Safe Air*, 373 F.3d at 1039 (quoting *Bell v. Hood*, 327 U.S. 678, 682–83 (1946)). But dismissal under 12(b)(1) is not appropriate when "the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits of the action." *Sun Valley Gasoline, Inc. v. Ernst Enter., Inc.*, 711 F.2d 138, 139 (9th Cir. 1983) (internal quotation marks omitted) (quoting *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983)).

**B.    *Federal Rule of Civil Procedure 12(b)(2)***

"There are two limitations on a court's power to exercise personal jurisdiction over a nonresident defendant: the applicable state personal jurisdiction rule and constitutional principles of due process." *Sher v. Johnson*, 911 F.2d 1357, 1360 (9th Cir. 1990). California's long-arm jurisdictional statute permits the exercise of personal jurisdiction so long as it comports with federal due process. *See* Cal. Civ. Proc. Code § 410.10; *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800–01 (9th Cir. 2004). "[Federal] [d]ue process precludes a court from asserting jurisdiction over a defendant unless the defendant has certain minimum contacts with the forum state," *Sher*, 911 F.2d at 1361, "such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice,'" *Schwarzenegger*, 374 F.3d at 801 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted)).

Under the minimum contacts test, jurisdiction can be either "general" or "specific." *Doe v. Unocal Corp.*, 248 F.3d 915, 923 (9th Cir. 2001). General jurisdiction depends on the defendant's "substantial, continuous and systematic" contacts with the forum, "even if

the suit concerns matters not arising out of his contacts with the forum." *Id.* Specific jurisdiction exists "where the cause of action arises out of or has substantial connection to the defendant's contact with the forum." *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.,* 284 F.3d 1114, 1123 (9th Cir. 2002). If a defendant has sufficient minimum contacts for the court to exercise personal jurisdiction over the defendant, the exercise of such jurisdiction must also be reasonable. *Asahi Metal Indus. Co. v. Superior Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 113 (1987).

Federal Rule of Civil Procedure 12(b)(2) allows a district court to dismiss an action for lack of personal jurisdiction. "When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff is 'obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction.'" *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (quoting *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977)). "A plaintiff must establish jurisdiction over each defendant individually." *Zuercher v. Hoskins*, No. 4:21-CV-05142-YGR, 2021 WL 6551433, at *2 (N.D. Cal. Dec. 16, 2021). The court "may order discovery on the jurisdictional issues." *Unocal*, 248 F.3d at 922 (citing *Data Disc. Inc. v. Sys. Tech. Ass'n, Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977)). "When a district court acts on the defendant's motion to dismiss without holding an evidentiary hearing, the plaintiff need make only a *prima facie* showing of jurisdictional facts to withstand" the motion. *Id.* (citing *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995)); *see also Data Disc*, 557 F.2d at 1285 ("[I]t is necessary only for [the plaintiff] to demonstrate facts which support a finding of jurisdiction in order to avoid a motion to dismiss.").

"Unless directly contravened, [the plaintiff's] version of the facts is taken as true, and 'conflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists.'" *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003) (citing *Unocal*, 248 F.3d at 922); *see also Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000). However, a court

"may not assume the truth of allegations in a pleading which are contradicted by affidavit." *Alexander v. Circus Enters., Inc.*, 972 F.2d 261, 262 (9th Cir. 1992) (internal citations and quotation marks omitted).

### C.    Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted."  To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557).

Though this plausibility standard "does not require 'detailed factual allegations,' . . . it [does] demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555).  A complaint will not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 557).  Put differently, "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Review under Rule 12(b)(6) requires a context-specific analysis involving the Court's "judicial experience and common sense." *Iqbal*, 556 U.S. at 679.  In performing that analysis, "a district court must accept as true all facts alleged in the complaint" and "draw all reasonable inferences in favor of the plaintiff." *Wi-LAN Inc. v. LG Elecs., Inc.*, 382 F. Supp. 3d 1012, 1020 (S.D. Cal. 2019).  If a complaint does not survive Rule 12(b)(6), a court grants leave to amend unless it determines that no modified contention "consistent with the challenged pleading could . . . possibly cure the deficiency."

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

### D.  Inapplicability of a Deferential Pleading Standard

Finally, though litigants proceeding pro se are ordinarily entitled to liberal construction of their pleadings and arguments, said liberal construction does not extend to practicing attorneys.  *Huffman v. Lindgren*, 81 F.4th 1016, 1021 (9th Cir. 2023).  To the extent such solicitude extends to plaintiffs who have attended law school and have past litigation experience, said solicitude is reduced.  *See id.* at 1020–21; *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010) ("[T]he degree of solicitude may be lessened where the [litigant proceeding pro se] is experienced in litigation and familiar with the procedural setting presented.").  As the Court previously held, Plaintiff is "a former attorney with decades of experience," so he is not entitled to a liberal pleading standard in this action.  First MTD Order at 8.

## II.  Analysis

In the SAC, Plaintiff asserts claims against two distinct, albeit related, groups of Defendants.  On the one hand, Plaintiff continues to bring claims against AABB as he has from the outset of this case, though this time around he adds as a Defendant AABB's general counsel, Diane Killion.  On the other hand, Plaintiff has added a new Defendant in Labcorp's Chief Science Officer, Dr. Marcia Eisenberg, against whom he asserts all claims but one.  Although much of the briefing from the two groups of Defendants overlaps, Dr. Eisenberg raises a threshold concern not addressed by the AABB Defendants— personal jurisdiction.  Because personal jurisdiction "is 'an essential element of the jurisdiction of a district . . . court,' without which the court is 'powerless to proceed to an adjudication,'" the Court begins there.  *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) (quoting *Emps. Reinsurance Corp. v. Bryant*, 299 U.S. 374, 382 (1937)).

### A.  Personal Jurisdiction Over Dr. Eisenberg

In her Motion to Dismiss, Dr. Eisenberg raises over a dozen arguments as to why Plaintiff's claims against her should be dismissed.  The threshold question the Court must address before reaching the others, however, is whether Plaintiff has established personal

jurisdiction over Dr. Eisenberg.  He has not.

Dr. Eisenberg argues that Plaintiff is unable to establish either general or specific personal jurisdiction over her because she resides in North Carolina and lacks any relevant contacts with the state of California that manifested in Plaintiff's claims.  In support of her argument, Dr. Eisenberg attached a declaration to her Motion in which she declared that she has lived and worked in North Carolina for over 35 years, has no connection to California other than infrequent travel to the state, and has "never traveled to California for anything related to Mr. Steinmeyer or the paternity test mentioned in his Second Amended Complaint."  Declaration of Dr. Marcia Eisenberg ("Eisenberg Decl.") ¶ 2, ECF No. 61-1.  Dr. Eisenberg further declared that she was "not directly involved in any paternity test relating to Mr. Randall Steinmeyer," has not "made any statement to the [FDA] regarding any citizen petitions that Mr. Steinmeyer submitted to the FDA," and has "never communicated or interacted with Mr. Steinmeyer in any way."  *Id.* ¶¶ 3–5.  From this factual basis, Dr. Eisenberg argues she "simply had nothing to do with Plaintiff's paternity test."  Eisenberg Mot. at 10.

Plaintiff retorts that Dr. Eisenberg's argument "is simply a farce."  Eisenberg Opp'n at 7.  He points to factual allegations in the SAC revealing that Dr. Eisenberg "specifically conspired bribed [sic] his expert and switched his test with a known fraud," *id.* (citing SAC at 14), "caused defamation of Plaintiff where and while he is a citizen in the state of California, *id.* at 8 (citing SAC at 23–28), and established a new testing standard for paternity tests nationwide to conceal her fraud, *id.* (citing SAC at 41).

In the face of Dr. Eisenberg's declaration, these factual allegations fall well short of establishing personal jurisdiction.  As far as general personal jurisdiction is concerned, Plaintiff himself alleges in the SAC that Dr. Eisenberg is a North Carolina citizen.  SAC ¶ 15.  This allegation is consistent with Dr. Eisenberg's declaration that she has lived in North Carolina, at this point, for several decades and intends to remain there.  Eisenberg Decl. ¶ 2.  In the absence of explicit consent or physical presence in the state through service of process, general jurisdiction is only proper where the defendant engages in "a

course of conduct[] from which it is proper to infer an intention to benefit from and thus an intention to submit to the laws of the forum state." *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880–81 (2011). There is no plausible argument that Dr. Eisenberg's contacts with California are so "continuous and systematic" that they "approximate physical presence" here. *Schwarzenegger*, 374 F.3d at 801 (first quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984); and then quoting *Bancroft & Masters*, 223 F.3d at 1086)).

Nor do Dr. Eisenberg's contacts with California subject her to specific jurisdiction in the state. For the Court to have specific jurisdiction over a defendant, "1) the nonresident defendant must have *purposefully availed* himself of the privilege of conducting activities in the forum by some affirmative act or conduct; 2) plaintiff's claim must *arise out of* or result from the defendant's forum-related activities; and 3) exercise of jurisdiction must be *reasonable*." *Roth v. Garcia Marquez*, 942 F.2d 617, 620–21 (9th Cir. 1991) (emphasis in original). Plaintiff has not established even the first element of this three-part test.

Under the purposeful availment prong, a defendant may "not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or third person." *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal citations and quotation marks omitted). Although one's "status as [an] employee[] does not somehow insulate them from jurisdiction," *Calder v. Jones*, 465 U.S. 783, 790 (1984), an "employee's contacts with the forum state are not to be judged by the employer's activities there," *Knuth v. Cap Patrol, LLC Ohio*, No. 23-cv-1676-BAS-DEB, 2024 WL 2925321, at *6 (S.D. Cal. June 10, 2024) (citing *Davis v. Metro*, 885 F.2d 515, 521 (9th Cir. 1989)). The relationship between the defendant and the forum state "must arise out of contacts that the 'defendant *himself*' creates." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quoting *Burger King*, 471 U.S. at 475 (emphasis in original)).

Here, Plaintiff points to no factual allegations that demonstrate Dr. Eisenberg *herself* created relevant contacts with California. Several of Plaintiff's allegations are built upon

23-CV-1160 JLS (DTF)

allegedly defamatory statements Dr. Eisenberg made about Plaintiff while he resided in California, but none of those allegations specify which statements can be attributed to whom.  Plaintiff broadly alleges "Defendants" made defamatory statements about him during the course of FDA proceedings, but none are directly tied to Dr. Eisenberg.  *See, e.g.*, SAC ¶ 95 ("*Defendants* falsely claimed that MNT's parading as paternity tests was 'a widely accepted practice documented and validated in many peer-reviewed scientific journals.'" (emphasis added)).  He also alleges Dr. Eisenberg helped to effectuate a nationwide transition from legacy paternity testing to MNT Tests in June 2023, but to the extent this transition in 2023 had any impact on Plaintiff's allegedly erroneous paternity tests from 2017 and 2018, Plaintiff alleges no facts that demonstrate Dr. Eisenberg's role in *AABB*'s standard-setting decisions, if she even had one at all as *Labcorp*'s Chief Science Officer.  *See Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1109 (9th Cir. 2020) ("We do not impute a corporation's forum contacts to each of the corporation's employees.  Instead, we assess whether each individual had minimum contacts with the forum such that the exercise of jurisdiction over that individual would comport with traditional notions of fair play and substantial justice." (citing *Calder*, 465 U.S. at 790)).  Finally, Plaintiff's allegations that Dr. Eisenberg bribed expert witnesses related to Plaintiff's paternity tests are directly contradicted by Dr. Eisenberg's declaration, and Plaintiff presents no competing evidence to call that declaration into question.  *See Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) ("[W]e may not assume the truth of allegations in a pleading which are contradicted by affidavit . . . ." (alteration in original) (quoting *Data Disc*, 557 F.2d at 1284)).

Accordingly, Plaintiff has failed to meet his burden of establishing that Dr. Eisenberg has purposefully availed herself "of the privilege of conducting activities in [California], thereby invoking the benefits and protections of [California's] law." *Myers v. Bennett L. Offs.*, 238 F.3d 1068, 1072 (9th Cir. 2001) (citing *Sher*, 911 F.2d at 1361). He has, therefore, failed to establish either general or specific jurisdiction against Dr. Eisenberg, and his claims against her are **DISMISSED WITHOUT PREJUDICE**.

See *Cox v. CoinMarketCap OPCO, LLC*, 112 F.4th 822, 836 (9th Cir. 2024) ("A dismissal for lack of personal jurisdiction does not adjudicate the merits and so should be without prejudice." (citing *Grigsby v. CMI Corp.*, 765 F.2d 1369, 1372 n.5 (9th Cir. 1985))).

### B.    Claims Against AABB Defendants

As stated above, Plaintiff's SAC asserts claims against the AABB Defendants for unjust enrichment, tortious interference with contract, public nuisance, defamation, battery, and injunctive and declaratory relief.  The SAC also asserts claims against Killion alone for conspiracy to defame and for violating 42 U.S.C. § 1985(2).  Plaintiff has, once before, asserted the unjust enrichment, tortious interference with contract, public nuisance, and injunctive and declaratory relief claims against AABB; nearly all of these previously asserted claims were dismissed as barred by issue preclusion, while the injunctive and declaratory relief claim was dismissed for lack of Article III standing.  Second MTD Order at 10, 22–24.  The remaining claims are brought now for the first time.  As before, the AABB Defendants argue the non-defamation claims fail under issue preclusion, and they raise an assortment of other arguments as to why all the claims otherwise fail as a matter of law.

### 1.    Issue Preclusion

Issue preclusion, also known as collateral estoppel, "bars the relitigation of issues actually adjudicated in previous litigation."  *Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1320 (9th Cir. 1992).  Federal courts "considering whether to apply issue preclusion based on a prior state court judgment must look to state preclusion law."  *Hardwick v. County of Orange*, 980 F.3d 733, 740 (9th Cir. 2020) (quoting *McInnes v. California*, 943 F.2d 1088, 1092–93 (9th Cir. 1991)).

Relevant here is California law, under which issue preclusion applies "(1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party."  *Samara v. Matar*, 419 P.3d 924, 926 (Cal. 2018) (quoting *DKN Holdings LLC v. Faerber*, 352 P.3d 378, 387 (Cal. 2015)).  Even when those elements are met, however,

preclusion will not apply under certain circumstances. "[P]reclusion exceptions include public policy, unforeseeability, and the inability or lack of incentive to litigate the prior adjudication." *In Re CWS Enters., Inc.*, 870 F.3d 1106, 1119 n.37 (9th Cir. 2017) (citing *Olson v. Cory*, 184 Cal. Rptr. 325, 336 n.9 (Ct. App. 1982)).

In their instant Motion to Dismiss, the AABB Defendants lead with the argument that has twice before been successful in this litigation—that most of Plaintiff's claims are barred under the doctrine of issue preclusion. The AABB Defendants specifically raise this argument, now for a third time, with respect to Plaintiff's non-defamation claims for unjust enrichment, tortious interference with contract, public nuisance, battery, and violation of 42 U.S.C. § 1985(2). AABB MTD at 4–7. They contend that Plaintiff has reasserted these claims without altering them in any way that might dictate a conclusion other than the one the Court has consistently reached—that Plaintiff may not "seek damages against AABB . . . based upon the superior court's finding that Plaintiff is the Child's father." *Id.* at 5. Plaintiff's new claims, too, "each seek to recover for injuries that flow from the allegedly flawed MNT testing," according to the AABB Defendants, so once again, none of Plaintiff's "claims assert an injury that is distinct from the allegedly flawed paternity test." *Id.* at 6–7.

Plaintiff, for his part, resists that he is attempting to relitigate the issue of his previously adjudicated paternity. He accuses the AABB Defendants of "conflat[ing] a judge's determination of *fatherhood* with a DNA test determination of '*biological' fatherhood via an infallible DNA paternity test*." AABB Opp'n at 5–6 (emphasis in original). To that end, Plaintiff argues that the superior court never analyzed "whether Plaintiff's test was a legitimate test, or whether there was legitimate paternity evidence, or whether the expert was a legitimate expert[, . . .] or whether the test violated the regulations and statutes." *Id.* at 6. Plaintiff goes on to argue that, identicality of the litigated issue aside, the remaining elements of issue preclusion are not met either. *Id.* at 7.

Plaintiff is trying to slice the baloney too thin. For purposes of issue preclusion, "[a]n 'issue' includes 'any legal theory or factual matter which could have been asserted

in support of or in opposition to the issue which was litigated.'" *Knopp v. JP Morgan Chase Bank N.A.*, No. 1:12-CV-1428 AWI SKO, 2012 WL 4056785, at *5 (quoting *Border Bus. Park, Inc. v. City of San Diego*, 49 Cal. Rptr. 3d 259, 281 (Ct. App. 2006)). This broad conception of the scope of an "issue," coupled together with the general principle that trial courts are presumed to have "made all findings necessary to support the judgment under any theory which was before the court," compels the conclusion that Plaintiff may not now disrupt the finality of his adjudicated paternity in state court. *See Border Bus. Park, Inc.*, 49 Cal. Rptr. 3d at 268 (first citing *In re Marriage of Ditto*, 253 Cal. Rptr. 770 (Ct. App. 1988); and then citing *Gray v. Gray*, 197 P. 945 (Cal. 1921)).

Here, as before, each of the elements of issue preclusion are met as to Plaintiff's claims that seek damages arising out of his paternity of the child. As the Court held before, "[u]nderlying Plaintiff's claims for damages is the contention that, due to [AABB's] conduct, Plaintiff (1) was erroneously found to be the father of the Child, and (2) suffered financial losses as a result. But Plaintiff is precluded from disputing the former, so he cannot seek damages as measured by the latter." First MTD Order at 13. Plaintiff cannot now cherry pick micro-theories that he failed to raise before the state court judge, repackage them as new "issues," and make an end-run around a judicial determination that is not to his liking. Twice before, the Court has held "that Plaintiff is precluded from basing his claims for monetary damages on the contention that he is not the father of the Child," and it so holds once again. *See id.* at 14; *see also* Second MTD Order at 10 ("Despite lengthy allegations of how Defendant interfered with Plaintiff's ability to obtain a true paternity test, nowhere does the Complaint allege that said interference caused Plaintiff any injury other than an erroneous paternity determination."). Accordingly, Plaintiff's repeat claims for unjust enrichment, tortious interference with contract, and public nuisance (Claims I–V and VII) are **DISMISSED**. This same conclusion holds true with respect to Plaintiff's newly added claims for tortious interference with contract as to private counsel, battery, and violation of 42 U.S.C. § 1985(2), which also seek damages stemming from his

/ / /

allegedly erroneous paternity tests.[2]    Thus, Claims VI, IX, XII, and XIV are also **DISMISSED**.

### 2.    *Defamation Claims*

In California, claims for defamation and conspiracy to defame are subject to a one-year statute of limitations.  *See Hitt v. Hitt*, 2024 WL 5085654, at *9 (Cal. Ct. App. Dec. 11, 2024) ("The statute of limitations for defamation claims is one year from the date of publication." (citing Cal. Civ. Proc. Code § 340(c))); *see also Maheu v. CBS, Inc.*, 247 Cal. Rptr. 304, 310 (Ct. App. 1988) ("In an action based on civil conspiracy, the applicable statute of limitations is determined by the nature of the action in which the conspiracy is alleged." (citing *Bedolla v. Logan & Frazer*, 125 Cal. Rptr. 59 (Ct. App. 1975))).  The general rule is that each publication of a defamatory statement "ordinarily gives rise to a new cause of action for defamation."  *Shively v. Bozanich*, 80 P.3d 676, 683 (Cal. 2003).

The AABB Defendants argue Plaintiff's defamation claims arise from conduct that

---

[2] The Court supposes that Plaintiff's battery claim may very well support a damages contention stemming from an injury distinct from that of the state court's adjudication of Plaintiff's paternity, but Plaintiff makes clear in his Opposition that his battery claim is premised upon the allegedly erroneous paternity result.  *See* Opp'n at 6 ("[A]ll of these claims (battery, tortious interference, nuisance, 42 U.S.C. 1985, assert injury that is distinct from a judicial fatherhood determination (vs infallible biological DNA paternity test).").  The Court may have been inclined to allow Plaintiff to squeeze past issue preclusion with his battery claim to the extent the claim seeks damages from an injury distinct from a flawed paternity test, but as the Court stated before, it "is not an advocate and is not required to create and address arguments in contexts in which they were not argued."  Second MTD at 10 (quoting *Life Plans, Inc. v. Sec. Life of Denver Ins. Comp.*, No. 11 C 8449, 2014 WL 12771336, at *2 (N.D. Ill. Jan. 29, 2014)).  Plaintiff has chosen to double down on his pursuit of damages arising out of his paternity of the child, and the Court will not stand in the way of that choice.

In any event, Plaintiff's battery claim fails on the merits.  In the medical procedure context, battery is "reserved for those circumstances when a doctor performs an operation to which the patient has not consented."  *Cobbs v. Grant*, 502 P.2d 1, 8 (Cal. 1972) (en banc).  Here, Plaintiff has not alleged that either of the AABB Defendants ever touched him, so he has failed to plead a battery claim under California law.  *See Huntman v. Danek Med., Inc.*, No. 97-2155-IEG RBB, 1998 WL 663362, at *3 n.8 (S.D. Cal. July 24, 1998) (granting the defendant, a medical device manufacturer, summary judgment on a battery claim because the "plaintiff has not and cannot produce any evidence that defendant touched plaintiff"); *see also N.N.V. v. Am. Ass'n of Blood Banks*, 89 Cal. Rptr. 2d 885, 889 (Ct. App. 1999) ("The AABB does not itself collect, prepare, test, process, store or distribute blood or blood products.").

occurred more than one year before the claims were brought, thus barring them under the applicable statutes of limitations.  They point to July 2022 testimony they made during FDA proceedings related to Plaintiff's citizen petition as the source of the alleged defamatory conduct but say that Plaintiff bringing the claims for the first time on September 23, 2024, is too little too late.  *See* AABB MTD at 8.  Plaintiff counters that the Court should apply the discovery rule to excuse his late filing of the claims because he "did not discover, and reasonable and diligent investigation wouldn't have disclosed that the MNT was not a statutory paternity test," for quite some time after the alleged misconduct occurred.  AABB Opp'n at 8–11.

Plaintiff's invocation of the discovery rule does not persuade.  Plaintiff takes issue with a lengthy collection of statements made by the AABB Defendants during the July 2022 FDA proceedings, but only a handful of those statements are alleged to be defamatory.  As far as the Court can tell, Plaintiff's defamation claim merely rests on the AABB Defendants (1) "falsely suggest[ing] Plaintiff (and mother) abandoned a child," (2) stating that the MNT "concluded with 99.99% certainty that Mr. Steinmeyer was the [biological] father of the child," and (3) stating that Plaintiff "was the subject of a paternity lawsuit brought by the State of California in 2017 to obtain parental child support for his daughter who was reportedly placed in state foster care."  SAC ¶¶ 89–90.  Although the California Supreme Court has "noted 'that in some instances, the accrual of a cause of action in tort is delayed until the plaintiff discovered (or reasonably should have discovered or suspected) the factual basis for his or her claim,'" Plaintiff provides no convincing reason why he was unable to determine the veracity of these allegedly defamatory statements upon first encounter.  *See Hebrew Acad. of San Francisco v. Goldman*, 70 Cal. Rptr. 3d 178, 184 (2007) (quoting *Shively*, 80 P.3d at 686).  This is not a case where the allegedly defamatory statements were "hidden, inherently undiscoverable, or inherently unknowable."  *See Long v. Walt Disney Co.*, 10 Cal. Rptr. 3d 836, 839 (Ct. App. 2004) (internal citations and quotation marks omitted).  Nor can the discovery rule be used "to delay the accrual of [a] plaintiff's cause of action beyond the point at which their factual

basis became accessible to [the] plaintiff to the same degree as it was accessible to every other member of the public." *Shively*, 80 P.3d at 690. Accordingly, the discovery rule has no application to Plaintiff's defamation claim and is barred as untimely. Because Plaintiff's defamation claim is barred by the statute of limitations, so too is his claim for conspiracy to defame. *See Basu v. Grewal*, No. B318575, 2024 WL 1692979, at *7 (Cal. Ct. App. Apr. 19, 2024) (dismissing civil conspiracy claim on statute of limitations grounds where the gravamen of the conspiracy claim was the same as the plaintiff's underlying fraud claims, which were barred by the statute of limitations).

To the extent Plaintiff intends to base his defamation claim on any other statements the AABB Defendants may have made during the July 2022 FDA proceedings, such a claim is independently barred by the litigation privilege, which extends an "*absolute* privilege for a publication made 'in any (1) legislative or (2) judicial proceeding, or (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable [by a mandate action] . . . .'" *Slaughter v. Friedman*, 649 P.2d 886, 889 (Cal. 1982) (en banc) (alteration in original) (emphasis in original) (quoting Cal. Civ. Code § 47); *see also Wise v. Thrifty Payless, Inc.*, 100 Cal. Rptr. 2d 437, 442 (Ct. App. 2000) (holding communications with the DMV regarding a licensee's fitness to drive as protected by the litigation privilege because the "absolute privilege exists to protect citizens from the threat of litigation for communications to government agencies whose function it is to investigate and remedy wrongdoing" (citing *Braun v. Bureau of State Audits*, 79 Cal. Rptr. 2d 791, 796 (Ct. App. 1998))). FDA citizen petitions are expressly authorized by law as "a means afforded by the FDA for raising concerns about products the FDA reviews," and, thus, fall within the definition of a "judicial or quasi-judicial proceeding" as defined in *Silberg v. Anderson*, 786 P.2d 365 (Cal. 1990). *See Neurelis, Inc. v. Aquestive Therapeutics, Inc.*, 286 Cal. Rptr. 3d 631, 647 (Ct. App. 2021) (quoting *Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 57 (2d Cir. 2016)); *see also* 21 C.F.R. § 10.30 (prescribing the procedural requirements for filing a citizen petition).

Plaintiff does not oppose the AABB Defendants' contention that the defamation claim is barred by the litigation privilege, and indeed, he concedes in his Opposition that the allegedly defamatory statements were "published on the FDA website and connection [sic] with a public FDA citizen petition." AABB Opp'n at 18. Accordingly, even if the defamation claims were not barred by the statute of limitations, they cannot be sustained due to the litigation privilege because the AABB Defendants' statements were made in connection with a quasi-judicial proceeding intended to prompt an investigation of wrongdoing. *See Moser v. Encore Cap. Grp., Inc.*, No. 04CV2085-LAB (WMc), 2006 WL 8427269 (S.D. Cal. May 2, 2006) (explaining that courts have consistently applied the litigation privilege "where the communication reported or complained about a wrongdoing or was intended to trigger an investigation"); *see also Slaughter*, 649 P.2d at 890 (discussing the broad interpretation given to "official proceeding" that includes "communication to or from *governmental* officials which may precede the initiation of formal proceedings") (emphasis in original). This independent ground for decision applies to each of the allegedly defamatory statements.

Finally, Plaintiff invokes the relation-back doctrine to cure his filing delay, but his defamation claims remain woefully deficient. Aside from the claims' failure under the litigation privilege, Federal Rule of Civil Procedure 15(c)(1)(B) provides that "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." "Claims arise out of the same conduct, transaction, or occurrence if they 'share a common core of operative facts' such that the plaintiff will rely on the same evidence to prove each claim." *Williams v. Boeing Co.*, 517 F.3d 1120, 1133 (9th Cir. 2008) (quoting *Martell v. Trilogy Ltd.*, 872 F.3d 322, 325–26 (9th Cir. 1989)).

No "common core of operative facts" exists between the claims in the original Complaint—filed on June 22, 2023, before the statute of limitations would have run—and the defamation claims in the SAC. The allegedly defamatory statements arose out of

purported communications made throughout the course of the 2022 FDA citizen petition proceedings, but aside from referencing the existence of said proceedings, the Complaint makes no mention of what statements were made nor does it refer to any of the other particulars that would have given the AABB Defendants "fair notice of the transaction, occurrence, or conduct called into question." *Martell*, 872 F.2d at 325.  Indeed, the gravamen of Plaintiff's Complaint revolves around the financial injury Plaintiff suffered from the allegedly erroneous paternity tests,[3] whereas the gravamen of a defamation claim springs out of a reputational injury to the plaintiff.  *See McGuire v. Brightman*, 145 Cal. Rptr. 256, 262 (Ct. App. 1978) ("[T]he essence of defamation is injury to the reputation of the plaintiff in his home area where he is known.").  Where, as here, a "defamation claim alleges facts that were never previously alleged, and . . . involves a type of injury . . . that was not involved in any prior complaint," the relation-back doctrine has no applicability.  *See Esteem v. City of Pasadena*, No. CV 04-662-GHK (MANx), 2007 WL 4270360, at *25 (C.D. Cal. Sept. 11, 2007).

For the above-discussed reasons, Plaintiff's defamation and conspiracy to defame claims (Claims VIII and XI) are **DISMISSED**.[4]

### 3. *Article III Standing for Declaratory and Injunctive Relief*

Having addressed his claims for damages, the Court now turns to Plaintiff's remaining claim for injunctive and declaratory relief (Claim XIII).  In his SAC, Plaintiff alleges that, if the AABB Defendants' purported fraudulent scheme perpetuates, he "will likely be subjected to more injury, fraud, theft, and other harms described" in the SAC.  SAC ¶ 239.  What goes unsaid is any semblance of a concrete explanation of what "injury,

---

[3] The Court recognizes that, in his Motion for Preliminary Injunction, Plaintiff additionally asserted an emotional injury taking the form of, what Plaintiff referred to as, shaken faith syndrome, *see* ECF No. 6 at 22, but that injury is similarly distinct from the reputational injury associated with defamation.

[4] Because the Court already held above that it does not have personal jurisdiction over Dr. Eisenberg, Plaintiff's conspiracy to defame claim against her (Claim X) has already been dismissed without prejudice. Nevertheless, the reasoning of this section applies equally to that claim, too.

fraud, theft, and other harms" Plaintiff is referring to.  In his Opposition to the instant Motion to Dismiss, Plaintiff clarifies that his basis for declaratory and injunctive relief stems from the fact that: (1) Plaintiff was injured by his 2017 paternity test, (2) the AABB Defendants have switched their testing standard, and (3) Plaintiff is in the process of showing his paternity test was fraudulent.  *See* AABB Opp'n at 12–14.

The Court rejected these same arguments in prior Orders, and Plaintiff has not articulated a novel approach to the issue that warrants further review.  *See* Second MTD Order at 22–24.  Because Plaintiff's arguments are "replica[s] of that which he advanced previously in this litigation and ha[ve] been squarely rejected," the Court once again holds that Plaintiff has failed to establish Article III standing to pursue declaratory and injunctive relief.  *Id.* at 22.  Accordingly, Claim XIII is **DISMISSED**.

## MOTION FOR RULE 11 SANCTIONS

### I.    Legal Standard

Under Federal Rule of Civil Procedure 11, when a "pleading, written motion, or other paper," Fed. R. Civ. P. 11(b), "is frivolous, legally unreasonable, or without factual foundation, or is brought for an improper purpose," the court may impose sanctions, *Warren v. Guelker*, 29 F.3d 1386, 1388 (9th Cir. 1994).  A request for sanctions must be made by separate motion, and the moving party must provide the other party twenty-one days in which to correct or withdraw the writing at issue prior to filing the sanctions motion.  Fed. R. Civ. P. 11(c)(2).

The standard governing whether a pleading or motion is "frivolous" or brought for an "improper purpose" is one of reasonableness and objectivity.  *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990) (en banc).  Where reasonable inquiry would reveal errors, a party may not avoid sanctions by claiming an innocent, good-faith mistake or carelessness.  *Lloyd v. Schlag*, 884 F.2d 409, 412 (9th Cir. 1989). However, "sanctions should be reserved for the 'rare and exceptional case where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose.'"  *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir.

1997) (quoting *Operating Eng'rs Pension Tr. v. A-C Co.*, 859 F.2d 1336, 1344 (9th Cir. 1988)).  Even if a court finds that a violation has occurred, the imposition of sanctions is discretionary.  *See Warren*, 29 F.3d at 1390.

In addition, "the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the [Rule 11] motion."  Fed. R. Civ. P. 11(c)(2).  "A party defending a Rule 11 motion need not comply with the separate document and safe harbor provisions when counter-requesting sanctions."  *Patelco Credit Union v. Sahni*, 262 F.3d 897, 913 (9th Cir. 2001).

## II.    Discussion

Plaintiff's Second Motion for Rule 11 Sanctions looks a lot like his first.  As before, Plaintiff argues that several of the AABB Defendants' contentions in their Motion to Dismiss Plaintiff's First Amended Complaint are frivolous, legally unreasonable, without factual foundation, and brought for an improper purpose.  Specifically, Plaintiff takes issue with (1) the AABB Defendants' characterization of the MNT Tests as "paternity tests," (2) the AABB Defendants' assertion that AABB does not sell paternity tests, and (3) the AABB Defendants' assertion that it is a standard-setting body rather than a regulator.  Each of the disputed contentions of the AABB Defendants were raised in the context of briefing a motion to dismiss.

As the Court explained twice before, "[s]tatements in briefing are *argument*; they do not have evidentiary significance."  *See* ECF No. 35 at 4; *see also* Second MTD Order at 25.  The lack of evidentiary significance afforded to briefing makes sense, the Court reasoned, because allowing parties to address "arguments they consider spurious by . . . respond[ing] twice over—first with an opposition, and second with a motion [for sanctions] . . . would not 'secure the just, speedy, and inexpensive determination of every action and proceeding.'"  ECF No. 35 at 4–5 (quoting Fed. R. Civ. P. 1).

Each of the above disputed statements are "squarely within the bounds of proper argument," thus taking them outside the realm of the "rare and exceptional case" that warrants sanctions.  Second MTD Order at 25 (citing *Operating Eng'rs*, 859 F.2d at 1344).

The Court need not dwell any further on the merit of Plaintiff's Sanctions Motion, which is **DENIED**.

In Opposition, the AABB Defendants request an award of fees and costs associated with the Second Sanctions Motion on account of the frivolous nature of the Motion in the face of the Court's warning in its Order dismissing Plaintiff's FAC that "successive, duplicative sanctions motions will not be tolerated." *See* Second MTD Order at 26. The Court is sympathetic to the AABB Defendants' request, particularly in light of the inexplicable five-month delay in the filing of Plaintiff's Motion. *See Netbula, LLC v. Bindview Dev. Corp.*, No. C06-0711 MJJ (EMC), 2007 WL 2298624, at *3 (N.D. Cal. Aug. 6, 2007) (adopting the magistrate judge's fee's award to a defendant who successfully defended against an untimely sanctions motion). Nevertheless, Plaintiff filed his Second Sanctions Motion on the same day the Court issued its stern warning against "seeking judicial intervention for conduct that does not reach the high standard meriting the imposition of sanctions," *see* Second MTD Order at 25, so he was without the benefit of the Court's disposition of his First Sanctions Motion. Thus, the Court exercises its discretion to deny the AABB Defendants' request for fees and costs. *See Park Assist, LLC v. San Diego Cnty. Reg'l Airport Auth.*, 2020 WL 4260799, at *2 (S.D. Cal. July 24, 2020) (declining to award fees and costs to prevailing party in a Rule 11 motion even when it "may be that attorney's fees are appropriate for the Rule 11 Motion at issue here").

## CONCLUSION

In light of the foregoing, the Court **GRANTS** the AABB Defendants' Motion to Dismiss (ECF No. 53), **GRANTS** Dr. Eisenberg's Motion to Dismiss (ECF No. 61), and **DENIES** Plaintiff's Second Motion for Rule 11 Sanctions (ECF No. 46). Plaintiff's claims against Dr. Eisenberg and his claim for declaratory and injunctive relief are **DISMISSED WITHOUT PREJUDICE** because the Court lacks jurisdiction over those claims. The remainder of the claims are **DISMISSED WITH PREJUDICE** and **WITHOUT LEAVE TO AMEND** because Plaintiff has now been given several opportunities to plead a plausible claim for relief, yet it has become clear that he is unable to do so. *See Stone v.*

*Conrad Preby's*, No. 12-CV-2031-IEG (BLM), 2013 WL 139939, at *2 (S.D. Cal. Jan. 10, 2013) ("Further, the Ninth Circuit has recognized that plaintiffs do not enjoy unlimited opportunities to amend their complaints." (citing *McHenry v. Renne*, 84 F.3d 1172, 1174 (9th Cir. 1996))). As this concludes the litigation in this matter, the Clerk of the Court **SHALL CLOSE** the file.

      **IT IS SO ORDERED.**

Dated:  March 24, 2025

                                         Hon. Janis L. Sammartino
                                         United States District Judge

23-CV-1160 JLS (DTF)